PEOPLE v HOCQUARD
PEOPLE v MITCHELL

1. CRIMINAL LAW—SELF-INCRIMINATION—OFFER OF PROOF—CROSS-EX-AMINATION.

Requiring a defendant charged with prison escape to submit to cross-examination, after his offer of proof of the defense of duress was refused, did not violate his privilege against self-incrimination where there is no indication he initially took the stand for the limited purpose of making the offer of proof.

2. CRIMINAL LAW—SELF-INCRIMINATION—WAIVER—DEFENDANT AS WITNESS.

A defendant who takes the stand generally waives his constitutional right to refuse to answer any question that may be material to the case and which would, in the case of any other witness, be legitimate cross-examination.

3. CRIMINAL LAW—RIGHT TO FAIR TRIAL—ACTION OF COUNSEL.

A defendant was not denied the right to a fair trial and his conviction will not be reversed because of his counsel's action in allowing him to take the stand without attempting to limit the scope of examination, where the evidence is overwhelming that the defendant would have been convicted even if defense counsel had not proceeded as he did.

4. ESCAPE—PRISONS—DEFENSE OF NECESSITY—ELEMENTS.

The defense of necessity to the crime of prison escape may only

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 358.
[2] 21 Am Jur 2d, Criminal Law § 357.
[3] 21 Am Jur 2d, Criminal Law § 315.
[4, 5] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue § 16.
What justifies escape or attempt to escape, or assistance in that regard. 70 ALR2d 1430.
[6, 7] 60 Am Jur 2d, Penal and Correctional Institutions § 4.
[8] 21 Am Jur 2d, Criminal Law § 312 et seq.
[9] 21 Am Jur 2d, Criminal Law §§ 127 et seq., 319.
Duty of court when appointing counsel for defendant to name attorney other than one employed by, or appointed for, a co-defendant. 148 ALR 183.

be considered by the trier of fact where there is a prima facie showing of each of the following elements: (1) the compulsion must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm, (2) there is no time for a complaint to the authorities or there exists a history of futile complaints, (3) there is no time or opportunity to resort to the courts, (4) there is no evidence of force or violence used toward prison personnel or other "innocent" persons in the escape, and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

5. ESCAPE—DEFENSE OF NECESSITY—WELL-GROUNDED FEAR—TRIER OF FACT.

Whether a defendant was faced with a well-grounded apprehension of death or serious bodily harm, an element of the defense of necessity to a charge of attempted prison escape, is in all but the clearest cases to be decided by the trier of fact taking into consideration all the surrounding circumstances, including the defendant's opportunity and ability to avoid the feared harm.

6. ESCAPE—DEFENSE OF NECESSITY—RESORT TO COURTS—MANDAMUS.

A trial judge, in a trial for attempted prison escape, properly excluded the defense of necessity from the jury where there was no indication why the defendant would not have had the time or opportunity to resort to the courts for a writ of mandamus.

7. MANDAMUS—PRISONERS—MEDICAL TREATMENT—COURT RULES.

Mandamus is proper where there is a clear, legal right in the plaintiff or a clear, legal duty to act or desist, requiring no exercise of discretion by the defendant; mandamus is the proper procedure for a prisoner seeking medical attention (GCR 1963, 712).

8. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—ATTORNEY AND CLIENT—CONFLICT OF INTEREST.

The effective assistance of counsel guaranteed by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests (US Const, Am VI, Am XIV).

9. CRIMINAL LAW—CO-DEFENDANTS—SEPARATE TRIALS—INCONSISTENT DEFENSES—SAME COUNSEL.

Failure to grant a defendant's motion for severance was error

and his conviction should be reversed where he and a co-defendant were represented by the same counsel, the two defenses asserted were inconsistent with each other, and the defendant was seriously prejudiced by counsel's pursuance of his co-defendant's theory of defense; however, the conviction of a co-defendant will not be reversed where he was not prejudiced.

Appeal from Jackson, Gordon W. Britten, J. Submitted June 3, 1975, at Lansing. (Docket Nos. 16400, 16401.) Decided September 22, 1975. Leave to appeal applied for.

Earl E. Hocquard and Gene E. Mitchell were convicted of attempted prison escape. Defendants appeal. Hocquard's conviction affirmed. Mitchell's conviction reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendants.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

BASHARA, J. Defendants, Earl E. Hocquard and Gene E. Mitchell, were convicted by a jury of attempted prison escape. MCLA 750.193; MSA 28.390. Our Court affirmed the conviction in an order issued on January 25, 1974. The Michigan Supreme Court vacated the order and remanded for rehearing.[1] Later the Michigan Supreme Court amended their order to limit reconsideration to the issues of the scope of cross-examination of defendant Hocquard, the excluded defense of du-

---

[1] 392 Mich 804 (1974).

ress, and the denial of separate trials.[2] The facts are set out in a discussion of the issues.

The first issue presented is whether the trial judge erred in requiring Hocquard to remain on the witness stand for cross-examination after denying Hocquard's offer of proof on the defense of duress. Hocquard took the witness stand in his own defense and testified to his name and address. Defense counsel then inquired into Hocquard's medical history prior to the attempted prison escape. The prosecutor objected to the question on the ground that such inquiry was immaterial. The trial court ruled that the defense of duress was available in limited circumstances as a defense to prison escape and agreed to hear an offer of proof. Accordingly, the jury was excused and Hocquard made an offer of proof on the defense of duress. After the offer of proof the trial judge ruled that Hocquard's allegations did not satisfy the elements of the defense of duress. At this point defense counsel stated, "I'm wondering if he'd be on the stand, excused or remain here." The court ruled that Hocquard was still subject to cross-examination and brought back the jury. On cross-examination, without objection, Hocquard admitted all the elements of the crime.

Hocquard contends that he took the stand for the limited purpose of making an offer of proof on the defense of duress. Once the court ruled that the defense of duress was not available there was no reason for Hocquard to testify. Therefore, requiring Hocquard to submit to cross-examination violated his privilege against self-incrimination.

The record discloses nothing to indicate that Hocquard initially took the stand for the limited purpose of making an offer of proof on the defense

_____

[2] 393 Mich 762 (1974).

of duress. Defense counsel should have announced that he was proposing his witness for the sole purpose of a limited evidentiary hearing on the question of the defense of duress. Once the defendant assumed the stand he waived his constitutional right to refuse to answer any question that may be material to the case and which would, in the case of any other witness, be legitimate cross-examination. *People v Roger Johnson,* 382 Mich 632; 172 NW2d 369 (1969), *cert den* 397 US 1079, 90 S Ct 1533; 25 L Ed 2d 816 (1970).

We must determine whether the procedure of defense counsel allowing the defendant to take the stand without attempting to limit the scope of examination was so injurious that, but for this action, the defendant might not have been convicted. *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). The evidence, excluding the confession on the witness stand, shows that Hocquard did attempt to escape from prison. Two guards identified the defendant as the individual who came to the main gate dressed as a guard and attempted to leave the prison. Three other guards testified to seeing the defendant dressed in a guard uniform at the control center. The evidence tended to show that the defendant attempted to obtain a pass at the control center to leave the prison. When the defendant could not produce identification he was taken into custody. The evidence is overwhelming that the defendant would have been convicted even if defense counsel had not proceeded as he did.

The next issue presented is whether the trial court erred in refusing to allow the jury to consider Hocquard's offer of proof on the defense of duress. He attempted to show that he had a medical history of back problems and that he was

periodically treated by Dr. Frank Walker. Hocquard re-injured his back a month before the prison escape while working in the prison tin shop. He described the pain as so excruciating that he had difficulty sleeping at night. Hocquard testified that he requested help in obtaining medical attention from his shop supervisor and the security officer in the tin shop. A letter was obtained from Dr. Walker documenting Hocquard's back problems and copies of the letter were sent to the Prison Hospital Administrator and the Director of the Department of Corrections. Still Hocquard received no medical treatment. At the time of his attempted escape Hocquard testified that the pain was so severe that he could not bend at the waist. At the close of the offer of proof the trial court ruled that Hocquard's physical condition did not satisfy the elements of the defense of duress. Apparently, the trial judge did not believe that Hocquard's physical injury was of such a nature to induce a well founded apprehension of death or serious bodily harm, which is an element of the defense of duress.

In the past courts have refused to recognize defenses to prison escape based upon unsanitary and unhealthy conditions, *State v Davis,* 14 Nev 439 (1880), or intolerable living conditions and brutal and inhuman treatment by guards, *People v Whipple,* 100 Cal App 261; 279 P 1008 (1929), or inadequate medical attention. *State v Palmer,* 45 Del 308; 72 A2d 442 (1950). The rationale has been founded on public policy. See *State v Palmer, supra* at 310, 72 A2d at 444. We reject public policy considerations that condone and sanction inhuman treatment of prisoners incarcerated in penitentiaries.

The cases of *People v Harmon,* 53 Mich App 482;

220 NW2d 212 (1974), *lv granted* 392 Mich 817 (1974), and *People v Lovercamp,* 43 Cal App 3rd 823; 118 Cal Rptr 110 (1974), have respectively allowed the defenses of duress and necessity[3] to prison escape arising out of threats of homosexual attack. We believe that the defense of necessity is applicable to those situations where a prisoner had been denied requested medical care. However, we hold that the defense of necessity is a very limited defense to the crime of prison escape or attempted prison escape. It may only be considered by the trier of fact where there is a prima facie showing of evidence to support each and every one of the following elements:

1. "The compulsion must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough."[4]

2. "There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;[5]

3. "There is no time or opportunity to resort to the courts;

4. "There is no evidence of force or violence used

---

[3] The difference between the defenses of duress and necessity is that the source of compulsion for duress is the threatened conduct of another human being, while the source of compulsion for necessity is the presence of natural physical forces. 43 U Cinc L Rev 956, 960. Since Hocquard's theory of defense is that the denial of medical attention was the compulsion for his attempted escape, the proper name of the defense is necessity. Several terms have been used by courts to denote defenses based on compulsion, most commonly "duress", "necessity", "coercion", and "compulsion". U Cinc L Rev, *supra,* p 957, n 2. Michigan recognized the defense of compulsion in *People v Merhige,* 212 Mich 601; 180 NW 418 (1920). Since compulsion includes necessity this is not a recognition of a new defense in Michigan.

[4] *People v Merhige,* 212 Mich 601, 610–611; 180 NW 418 (1920).

[5] Elements two thru five are taken from *People v Lovercamp,* 43 Cal App 3rd 832; 118 Cal Rptr 110 (1974).

towards prison personnel or other 'innocent' persons in the escape; and

5. "The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."[6] (Footnote omitted.)

The facts presented in the offer of proof show that there existed a history of complaints seeking medical treatment and that no force or violence was used in the prison escape. The element of whether Hocquard was faced with a well grounded apprehension of death or serious bodily harm is "in all but the clearest cases, to be decided by the trier of fact taking into consideration all the surrounding circumstances, including the defendant's opportunity and ability to avoid the feared harm". *People v Harmon, supra,* at 486. While in retrospect the trial judge may have been in error in making the determination himself, *People v Harmon, supra,* had not been decided and was not available for reference. However, the record discloses no reason why Hocquard would not have had the time or opportunity to resort to the courts for a writ of mandamus[7] ordering prison officials to provide medical treatment. During the thirty-day period prior to the prison escape when Hocquard was sending letters and requesting help, he could have very easily resorted to the courts. Therefore,

---

[6] The element of return need not be considered since Hocquard failed to escape.

[7] *Parshay v Marquette Prison Warden,* 30 Mich App 556, 558; 186 NW2d 859 (1971), recognized that mandamus is proper where there is a "clear, legal right in the plaintiff or a clear, legal duty to act or desist, requiring no exercise of discretion on the part of the defendant". *People v Bland,* 52 Mich App 649, 656; 218 NW2d 56 (1974), held that a convicted criminal has a right to medical treatment while in prison and that denial of such treatment violates the Eighth Amendment protections against cruel and unusual punishment. Therefore mandamus under GCR 1963, 712 is the proper procedure for a prisoner seeking medical attention.

the trial judge properly excluded the defense of
necessity from the jury.

The final issue is whether the trial judge erred
in denying both defendants' motion for severance.
Defendants were represented by the same counsel.
One week before trial defense counsel moved for
severance because Mitchell was asserting the de-
fense of alibi which was at variance with Hoc-
quard's defense of necessity. The defenses were
inconsistent as shown when Hocquard took the
stand. On cross-examination Hocquard was asked
a series of questions revolving around the identity
of the second man in the prison escape. Hocquard
refused to answer these questions. However, the
inference was raised that Mitchell was the second
man. Defense counsel was then in the precarious
position of either attacking the credibility of Hoc-
quard to protect Mitchell's interest or to let Hoc-
quard's testimony go unchallenged at the expense
of Mitchell. Defense counsel chose the latter.

It must first be recognized that effective assist-
ance of counsel guaranteed by the Sixth Amend-
ment and made applicable to the states by the
Fourteenth Amendment "contemplates that such
assistance be untrammeled and unimpaired by a
court order requiring that one lawyer shall simul-
taneously represent conflicting interests". *Glasser
v United States,* 315 US 60, 70; 62 S Ct 457; 86 L
Ed 680 (1942). Furthermore, where co-defendants'
defenses are inconsistent and the trial court is
fully advised of the inconsistency before trial, it
may be an abuse of discretion not to grant sepa-
rate trials. *People v Markham,* 19 Mich App 616;
173 NW2d 307 (1969), *lv den* 383 Mich 804 (1970).

When defense counsel failed to impeach the
credibility of Hocquard, it only amplified the in-
consistency of the defenses of the parties. There

was no prejudice to Hocquard since counsel pursued his theory of the defense. However, in defense counsel's pursuance of Hocquard's theory of defense he seriously prejudiced Mitchell when he failed to impeach Hocquard's credibility.

Accordingly, defendant Mitchell's conviction is reversed and remanded for a new trial. Defendant Hocquard's conviction is affirmed.