PEOPLE v MARTIN

Docket No. 43993. Submitted March 4, 1980, at Lansing.—Decided
    October 6, 1980.

Ricky Martin was convicted of prison escape and was found guilty
    of being a second felony offender in the Jackson Circuit Court,
    Russell E. Noble, J. Prior to trial, the prosecutor filed a motion
    *in limine* to exclude evidence on the anticipated defense of
    medical necessity. At the hearing on the motion the defendant
    testified that he had had problems with his feet and eyes. With
    particular reference to the latter, he testified that on the day
    he left the prison farm he had blacked out and had almost been
    run over by a hi-lo. According to defendant he had "a great
    fear of losing [his] eyesight". Defendant testified that he had
    complained several times about his eyes and the troublesome
    bunions on his feet. He had also complained of migraine
    headaches. According to defendant, an examination at the
    infirmary had revealed his need for glasses. He did not receive
    the glasses until after the alleged escape. The two days preced-
    ing his leaving the prison farm, he had gone to the infirmary
    about his feet but had not been able to see a doctor. On the day
    he left, he complained to the foreman of migraine headaches
    and his aching feet. Defendant testified that he had not at-
    tempted to go to court for a writ of mandamus or other legal
    action to force the prison to give him medical treatment. He
    further testified, however, that he had a tenth grade education,
    he had never before been in legal trouble, there was no legal
    counselor at the prison farm, and he did not know what a writ
    of mandamus was. According to defendant, he was not aware of
    any legal action which may have been available to him. Defen-

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trials § 727.
[2, 4] 75 Am Jur 2d, Trial §§ 329, 330.
[3] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue §§ 6-16.
    Duress, necessity, or conditions of confinement as justification for
        escape from prison. 69 ALR3d 678.
[5] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 15.
[6] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 5.
[7] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 20.

dant left the prison farm around 10 p.m. and was picked up by the police, on the road near another prison farm, at 10 a.m. the next day. According to defendant, his intention had been to seek medical help inside the main prison where he would have priority access to the infirmary. The sole prison hospital was also there. There was no dispute that no violence was employed in the escape. The trial court ruled that defendant would not be allowed to present the defense to a jury. Because of the court's ruling, defendant waived trial by jury. Defendant appeals, alleging that the court's ruling was erroneous and that delay in filing the information charging him with being a second felony offender precluded conviction on that charge. *Held:*

1. The defense of necessity to the crime of prison escape may only be considered by the trier of fact where there is a prima facie showing of each of the following elements: (1) the compulsion must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used toward prison personnel or other "innocent" persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat. A criminal defendant has a right to have the jury instructed on a defense theory when there is a request for the instruction and evidence to support it. The sufficiency of the evidence is for the jury to determine once some supporting evidence has been introduced on a defense theory. There was some evidence on each element of the defense of necessity. The trial court erred in ruling it inadmissible.

2. The rule requiring a prosecutor who has knowledge of a defendant's prior record to proceed promptly, if at all, with an information charging the defendant as a habitual criminal should have prospective application only. The prosecutor filed the information after the close of plea negotiations but a week before trial. The conviction occurred before the Supreme Court's pronouncement in *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979). Since the procedure was proper at the time, the prosecutor will be permitted to proceed on the supplemental information in the event defendant is convicted upon retrial.

Reversed and remanded.

1. CRIMINAL LAW — JURY INSTRUCTIONS.

   A criminal defendant has a right to have the jury instructed on a defense theory when there is a request for the instruction and evidence to support it.

2. CRIMINAL LAW — JURY QUESTION — EVIDENCE — SUFFICIENCY OF EVIDENCE.

   The sufficiency of the evidence is for the jury to determine once some supporting evidence has been introduced on a defense theory.

3. ESCAPE — PRISONS — DEFENSE OF NECESSITY — ELEMENTS.

   The defense of necessity to the crime of prison escape may only be considered by the trier of fact where there is a prima facie showing of each of the following elements: (1) the compulsion must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used toward prison personnel or other "innocent" persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

4. ESCAPE — PRISONS — DEFENSE OF NECESSITY — JURY QUESTION.

   The defense of necessity to the crime of prison escape is a question for the jury in all but the clearest cases.

5. CRIMINAL LAW — HABITUAL CRIMINAL STATUTES — ESCAPE.

   The habitual criminal statutes apply to the felony of escape from prison.

6. CRIMINAL LAW — HABITUAL CRIMINAL STATUTES — CONSTITUTIONAL LAW.

   The habitual criminal statutes are constitutional.

7. CRIMINAL LAW — HABITUAL CRIMINAL STATUTES.

   The rule requiring a prosecutor who has knowledge of a defendant's prior record to proceed promptly, if at all, with an information charging the defendant as a habitual criminal should have prospective application only.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,*

Prosecuting Attorney, and *John L. Wildeboer,* Chief Appellate Attorney, for the people.

*Susan Jane Smith,* Assistant State Appellate Defender, for defendant on appeal.

Before: M. J. KELLY, P.J., and D. F. WALSH and BEASLEY, JJ.

D. F. WALSH, J. Defendant, Ricky Martin, was convicted, in a nonjury trial, of prison escape. MCL 750.193; MSA 28.390. He was also found guilty of being a second felony offender. MCL 769.10; MSA 28.1082. He was sentenced to a prison term of one year and four months to seven years and six months, to be served consecutively to the sentence which was being served by him on the day of his escape.

Prior to trial the prosecution filed a motion *in limine* to exclude evidence of the anticipated defense of medical necessity. Defendant, another inmate, and the prison's medical records administrator testified at the hearing on the motion. At the close of proofs, the trial court ruled that defendant would not be allowed to present the defense of medical necessity to a jury. The court's ruling was based on its evaluation of the evidence in light of the requirements set forth in *People v Hocquard,* 64 Mich App 331, 337-338; 236 NW2d 72 (1975), *lv den* 397 Mich 833 (1976). Because of the court's ruling, defendant waived trial by jury. The defense presented no opening statement, no witnesses and no closing argument. The court found defendant guilty of prison escape.

The Supreme Court has recently reiterated the right of a criminal defendant, in a jury trial, to have the trier of fact instructed on a defense theory when there is a request for the instruction

and evidence to support it. *People v Frederick Lester,* 406 Mich 252; 277 NW2d 633 (1979). Once the defendant has presented some supporting evidence, it is for the jury to determine, under proper instructions, its sufficiency. *People v Hoskins,* 403 Mich 95; 267 NW2d 417 (1978).

In our judgment, the trial court in the instant case impermissibly invaded the province of the jury in prohibiting introduction of evidence of the defense of medical necessity. While we express no opinion as to the sufficiency of the evidence to justify an acquittal based thereon, our examination of the record convinces us that defendant presented some evidence on each of the following requisite elements.

I. There must be present, imminent and impending compulsion of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. Threat of future injury is not sufficient. *People v Hocquard, supra,* 337.

Defendant testified that he had had problems with his feet and eyes. With particular reference to the latter, he testified that on the day he left the prison farm he had blacked out and had almost been run over by a hi-lo. According to defendant he had "a great fear of losing [his] eyesight".

II. There is no time to complain to the authorities or there is a history of futile complaints making any result from such complaints illusory. *Id.,* 337.

Defendant testified that he had complained several times about his eyes and the troublesome bunions on his feet. He had also complained of migraine headaches. According to defendant, an examination at the infirmary had revealed his

need for glasses. He did not receive the glasses until after the alleged escape. The two days preceding his leaving the prison farm, he had gone to the infirmary about his feet but had not been able to see a doctor. On the day he left, he complained to the foreman of migraine headaches and his feet.

III. There is no time or opportunity to resort to the courts. *Id.,* 337.

Defendant testified that he had not attempted to go to court for a writ of mandamus or other legal action to force the prison to give him medical treatment. He further testified, however, that he had a tenth grade education, he had never before been in legal trouble, there was no legal counselor at the prison farm, and he did not know what a writ of mandamus was. According to defendant, he was not aware of any legal action which may have been available to him.

IV. There is no evidence of force or violence used towards prison personnel or other innocent persons in the escape. *Id.,* 337-338.

That this element was established is beyond dispute.

V. The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat. *Id.,* 338.

Defendant left the prison farm around 10 p.m. and was picked up by the police, on the road near another prison farm, at 10 a.m. the next day. According to defendant, his intention had been to seek medical help inside the main prison where he would have priority access to the infirmary. The sole prison hospital was also there.

We find that defendant presented some evidence in support of each of the elements of the defense of necessity. Except in "all but the clearest cases", *People v Harmon,* 53 Mich App 482, 486; 220

NW2d 212 (1974), aff'd 394 Mich 625; 232 NW2d 187 (1975), the defense of necessity, like the analogous defense of duress, is a question for the jury. See *People v Luther,* 394 Mich 619, 622-623; 232 NW2d 184 (1975). Because defendant presented some competent evidence in support of his anticipated defense, the court erred in ruling that the defense could not be submitted to a jury. We reverse, therefore, and remand for a new trial.

Defendant also challenges his habitual offender conviction in several respects. His argument that it is impermissible to charge a prison escapee as an habitual offender has been rejected by the Supreme Court, *People v Shotwell,* 352 Mich 42; 88 NW2d 313 (1958), *cert den* 356 US 976; 78 S Ct 1141; 2 L Ed 2d 1149 (1958). Defendant's constitutional challenges have also been rejected. *People v Shastal,* 26 Mich App 347; 182 NW2d 638 (1970), *People v Potts,* 55 Mich App 622, 634-638; 223 NW2d 96 (1974), *lv den* 396 Mich 826 (1976).

Defendant's final claim is that delay in filing the supplemental information precludes conviction on that charge. The original information charging defendant with prison escape was filed on June 23, 1978. The supplemental information charging him as an habitual offender was not filed until October 4, 1978. Defendant was tried and convicted on the escape charge on October 12, 1978. It is not disputed that the supplemental information was filed as a direct result of defendant's refusal to plead guilty to the escape charge.

In *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), *reh den* 407 Mich 1152 (1979), the Supreme Court ruled that a prosecutor who has knowledge of a defendant's prior felonies must file habitual offender charges "promptly" if at all. *Fountain, supra,* 98. The Supreme Court cited two

purposes for the rule: the first was to provide fair notice to the accused; and the second was to avoid even the appearance of prosecutorial impropriety. *Fountain, supra,* 99.

With respect to the fair notice aspect of the *Fountain* decision, *Fountain* probably merely restates prior law. In *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968), the proper procedure for the timing of the filing of the supplemental information was clearly described.

"Thus, as we now read sections 10, 11, 12 and 13, they contemplate 2 separate situations and procedures to be followed when the prosecutor desires to make possible the meting out of an increased penalty pursuant to the habitual criminal sections of the code of criminal procedure. The procedure set forth in section 13 is to be followed whenever it appears to the prosecutor 'after conviction' of the current charge that the felon has a prior felony record. However, where it appears to the prosecutor before conviction of the current charge that the accused person is a prior felon, the accused person is to be informed against as a prior offender prior to conviction on the current charge; the procedure set forth in section 13 need not be followed." *Stratton, supra,* 356. (Footnote omitted.)

This procedure was approved by the Supreme Court in *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970). In *People v Marshall,* 41 Mich App 66; 199 NW2d 521 (1972), however, this Court ruled that the *Stratton/Hatt* procedure was not mandatory at least in the sense that failure to follow it would not preclude a prosecutor from proceeding on a supplemental information when there was some legitimate reason for not following the procedure and there was no showing that any substantial prejudice resulted to the defendant from the delay. The prosecutor would be precluded from

proceeding on the supplemental information if delay for which there was no good reason substantially prejudiced the defendant.

"Clearly, the prosecutor has discretion to file a supplemental information under the habitual criminal act after conviction, and is not limited to filing such supplemental information prior to conviction of a current charge, where he has knowledge of the previous conviction." *Marshall, supra,* 72-73.

However,

"* * * where no good reason exists for the delay in filing a supplemental information charging the defendant as a subsequent offender, and the delay on the part of the prosecutor substantially prejudices defendant's rights, the filing of that supplemental information clearly denies defendant his right to due process of law." *Marshall, supra,* 74.

In *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976), the Supreme Court cited *Marshall* without disapproval and ruled that the prosecutor's need to verify information contained in a rap sheet as to defendant's prior felonies was a legitimate reason for not following the *Stratton/Hatt* procedure. In his dissent in *Hendrick,* Justice LEVIN disagreed that verifying a rap sheet was a legitimate reason for delaying the filing of a supplemental information. He went on to describe forcefully the substantial prejudice which always results to a defendant who is required to go to trial on a criminal charge, or enter a plea of guilty, without notice that conviction on that charge will result in the filing of a supplemental information charging him as an habitual offender and increasing the severity of the possible consequences of conviction on the original charge.

"While the habitual offender provisions of the Code of Criminal Procedure do not create a separate offense, providing rather for enhanced punishment for the current offense, fairness requires notice to the offender that he may face enhanced punishment where the prosecutor is aware, in advance of the trial on the current offense, of the offender's prior record.

"The severity of the potential punishment that may be imposed is often reflected in the processing and disposition of charges against offenders. Minor offenders often are not cited; if cited they may be permitted to dispose of the matter informally, paying a predetermined fine. Accused persons aware that they will be placed on probation often plead guilty without appointment of counsel or offering a defense. Counsel need not be appointed for indigent offenders who are charged with minor offenses not subject to incarceration.

"Increased resources are generally devoted to the prosecution and defense of persons charged with serious offenses carrying long sentences. The law recognizes in many ways that the amount of process required by ordinary notions of fairness depends in part on the potential impact on the accused of the conviction.

"The nature of the accused's response, the care with which he prepares to defend himself, will often depend on the severity of the potential punishment. It is overwhelmingly important to an accused whether upon conviction of a fourth felony, say of carrying a concealed weapon, the maximum sentence is five years or life.

"In this connection, it is noteworthy that persons sentenced as habitual offenders are not eligible for parole before the expiration of the minimum term without the sentencing judge's approval." *Hendrick, supra,* 423-424 (LEVIN, J. dissenting). (Footnotes omitted.)

If requiring a defendant to go to trial on a principal offense without notice that he will be charged as an habitual offender in the event of conviction on that offense is always substantially prejudicial to that defendant, as Justice LEVIN

suggests in his *Hendrick* dissent, then *Stratton, Hatt, Marshall* and *Hendrick* are all reconcilable with *Fountain* and reveal the pre-*Fountain* rule of law relative to the timing of the filing of a supplemental information charging the defendant as an habitual offender to be as follows:

(1) When the prosecutor had knowledge of a defendant's prior convictions, a supplemental information charging the defendant as an habitual offender was to be filed prior to the conviction of the defendant on the current charge. When the prosecutor learned of the defendant's prior convictions only after the conviction of the defendant on the current charge, the information charging the defendant as an habitual offender could be filed after conviction on the current charge *(Stratton/Hatt);*

(2) Failure to follow the *Stratton/Hatt* procedure would not preclude a prosecutor from proceeding on a supplemental information charging a defendant as an habitual offender unless

(a) no good reason existed for the delay in filing the supplemental information, and

(b) the delay substantially prejudiced the defendant's rights *(Marshall);*

(3) The need to verify information contained in a rap sheet was a "good reason" for delaying the filing of a supplemental information until after a defendant's conviction on the current offense *(Hendrick*—majority opinion);

(4) Requiring a defendant to go to trial on a criminal charge, or to enter a plea of guilty, without notice that upon conviction on that charge a supplemental information would be filed increasing the severity of the possible consequences of conviction was always substantially prejudicial to that defendant *(Hendrick*—Levin, J., dissent).

The decision of the Supreme Court in *People v Fountain, supra,* is consistent with the pre-*Fountain* rule which evolved from *Stratton, Hatt, Marshall* and *Hendrick.* Both Fountain and Jones were convicted of the current offenses with which they were charged prior to the filing of the informations charging them as habitual offenders. Since both were required to go to trial without proper notice of the severity of the possible consequences of conviction, both were substantially prejudiced, and prosecution of both habitual offender informations would have been precluded under the pre-*Fountain* rule.

In the case before us here, however, the supplemental information was filed a week prior to the trial of the defendant on the prison escape charge. It provided fair notice to the defendant of the severity of the possible consequences of conviction on that charge. Therefore, with respect to the accomplishment of the first purpose for the *Fountain* rule, to provide fair notice to the accused, we conclude that the supplemental information was filed "promptly".

It is with respect to the accomplishment of the second purpose of the *Fountain* rule, to avoid even the appearance of prosecutorial impropriety, that the *Fountain* decision changes the prior law relating to the timing of the filing of the supplemental information charging a defendant as an habitual offender.

Prior to *Fountain* the use of a potential habitual offender charge as a plea bargaining tool was not objectionable. *Bordenkircher v Hayes,* 434 US 357; 98 S Ct 663; 54 L Ed 2d 604 (1978), *People v Roderick Johnson,* 86 Mich App 77, 78; 272 NW2d 200 (1978), *People v Sanders,* 91 Mich App 737, 741; 283 NW2d 841 (1979), *People v Jones,* 83 Mich App 559, 569; 269 NW2d 224 (1978). Therefore,

delay in filing the supplemental information until after plea negotiations terminated unsuccessfully, as happened in this case, would not have precluded a prosecutor from proceeding on an habitual offender charge as long as the defendant had fair notice of the prosecutor's intent to supplement prior to going to trial or entering a plea or was not otherwise prejudiced by the delay.

After *Fountain,* however, an habitual offender information will not be considered "promptly" filed unless it is filed at least prior to the initiation of any plea negotiations. Use of the threat of supplementation in plea negotiations will always, it seems to us, carry with it the appearance at least of an attempt by the prosecutor to coerce a guilty plea which may not otherwise have been offered. *Fountain* changes the previous law, therefore, in that in order to avoid even the appearance of prosecutorial impropriety it makes the *Stratton/Hatt* procedure mandatory in the sense that failure to follow it will preclude the prosecution from proceeding on an habitual offender charge even absent a showing of prejudice to the defendant resulting from delay in filing the supplemental information.

We have ruled, however, that this aspect of the *Fountain* decision should be applied prospectively only. *People v Taylor,* 99 Mich App 673; 299 NW2d 9 (1980). Since the defendant in this case was convicted prior to the date on which *Fountain* was decided, the prosecutor will not be precluded from again proceeding on the supplemental information in the event that the defendant is convicted of prison escape on retrial.

Defendant's convictions are reversed. The case is remanded for a new trial at which the defendant shall be permitted to present the defense of necessity.