GARRELTS v GARRELTS

Docket No. 47250. Submitted June 12, 1980, at Grand Rapids.—Decided October 23, 1980.

Dorothy Garrelts and James E. Garrelts were granted a divorce, Berrien Circuit Court, Harvey W. Moes, J. James appeals, alleging that the division of property ordered by the trial court was inequitable. Specifically, he alleges that the trial court erred by ruling that Mrs. Garrelts could invoke the Fifth Amendment privilege against self-incrimination and refuse to testify regarding the existence of some money she was alleged to have secreted in a safety deposit box, after she had already testified as to the marital assets. The alleged existence of the secret funds was the subject of a perjury charge which had been brought against Mrs. Garrelts and which was being held in abeyance pending completion of the divorce proceedings. *Held:*

1. The privilege against self-incrimination is applicable to both criminal and civil proceedings. By testifying on her own behalf as to the extent of the marital assets, however, Mrs. Garrelts waived the privilege and cross-examination as to those matters, including the alleged secret funds, should have been allowed.

2. On remand, should Mrs. Garrelts refuse to testify regarding the secret funds, the preferred sanction is that of civil contempt.

Reversed and remanded as to the division of property only.

1. WITNESSES — PRIVILEGE AGAINST SELF-INCRIMINATION — WAIVER OF PRIVILEGE.

A witness in either a criminal or a civil case may stand upon his constitutional right and refuse to answer any questions which might tend to incriminate him, but a witness who voluntarily testifies on his own behalf thereby ·waives such right and may

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 357.
   81 Am Jur 2d, Witnesses §§ 63, 64.
[2] 17 Am Jur 2d, Contempt § 32.

be subjected to cross-examination concerning the facts in the case as affecting his credibility.

2. CONTEMPT — PRIVILEGE AGAINST SELF-INCRIMINATION — WAIVER — STATUTES — COURT RULES.

The preferred sanction available to a trial court, where a witness who has waived the privilege against self-incrimination thereafter invokes the privilege and refuses to answer questions on cross-examination which pertain to matters the witness has already testified to, is to hold the witness in civil contempt (MCL 600.1725; MSA 27A.1725, GCR 1963, 506.6[1]).

*Donald L. Bleich,* for plaintiff.

*Tat Parish,* for defendant.

Before: ALLEN, P.J., and D. F. WALSH and G. R. McDONALD,* JJ.

ALLEN, P.J. On August 27, 1979, the Berrien County Circuit Court entered a judgment of divorce between Dorothy Garrelts and James Elmer Garrelts. Defendant, James Garrelts, appeals as of right from the trial court's division of property, claiming the division to be inequitable.

The parties were married on November 2, 1966. Mrs. Garrelts filed for divorce on July 18, 1977. Mr. Garrelts counterclaimed for divorce. Both parties accused the other of stealing, hiding and concealing marital assets. On August 1, 1977, the trial court entered an order prohibiting both parties from destroying, selling, concealing, or hiding any personal property of the parties. Both parties maintain the other has violated this order. On September 29, 1977, and October 21, 1977, James Garrelts submitted written interrogatories to Mrs. Garrelts. The interrogatories included questions asking for all safety deposit boxes opened or held

---

* Circuit judge, sitting on the Court of Appeals by assignment.

by Mrs. Garrelts. On March 3, 1978, and March
30, 1978, Mrs. Garrelts answered these interroga-
tories indicating that she held only one safety
deposit box located at the Inter-City Bank in Ben-
ton Harbor. Mrs. Garrelts's deposition was taken
on August 31, 1978, at which time she testified
under oath that the only safety deposit box in
which she held any interest was the one located in
the Inter-City Bank. Mr. Garrelts's attorney later
discovered that Mrs. Garrelts had in fact opened a
second safety deposit box under the fictitious name
of Elaine Sims in the First National Bank located
in Kalamazoo. Mr. Garrelts's attorney then had a
warrant for Mrs. Garrelts's arrest issued for per-
jury. Mrs. Garrelts has been arrested and ar-
raigned for perjury and her trial on that charge
was held in abeyance until the completion of these
divorce proceedings.

At the divorce trial, held on June 21 and 22,
1979, Mrs. Garrelts voluntarily took the stand and
testified that she quit her job upon marrying Mr.
Garrelts, raised his children, and did all house-
work as well as helped to run the family farm. She
testified as to what marital assets existed and
what personal property she brought into the mar-
riage. She indicated that she would not object to
splitting all marital assets on a 50-50 basis. She
also testified on direct and re-direct examination
that she did not take, secrete, or conceal any
money earned during the marriage. She affirma-
tively testified that all such money was used for
the mutual benefit of the marriage with the
knowledge and consent of Mr. Garrelts. She fur-
ther testified that she had no money in any safety
deposit box. However, when cross-examined con-
cerning her alleged secretly hidden money, earned
during the marriage from a family operated milk
route, in a safety deposit box in the First National

Bank in Kalamazoo, Mrs. Garrelts refused to answer. She claimed the Fifth Amendment allowed her to remain silent rather than testify and incriminate herself in the pending perjury case against her.

Mr. Garrelts's trial counsel argued that it was error to allow Mrs. Garrelts to testify in her own behalf as to what marital assets existed and what happened to money earned during the marriage and also claim the right to be free from cross-examination on these matters raised by her own testimony on direct and re-direct testimony. Mrs. Garrelts's counsel maintained that Mrs. Garrelts could invoke the Fifth Amendment but conceded that an adverse presumption could be drawn against Mrs. Garrelts in connection with the questions she refused to answer. The trial court ruled that Mrs. Garrelts could invoke the Fifth Amendment and refuse to testify. The trial court's ruling on this issue is the principal error raised by the husband on appeal.

In its oral opinion, the trial court stated:

"It has not been proven to my satisfaction that I know where to account for it [the milk route money allegedly secreted by Mrs. Garrelts in the First National Bank safety deposit box] * * *."

* * *

"I have heard testimony from Mr. Garrelts saying he doesn't know what happened to it. He never authorized it, and on the other side of the coin [by Mrs. Garrelts], 'we used it for our household expenses'."

* * *

"I believe there had to be some knowledge or consent of the use of that money in cash."

* * *

"No one has traced it, no one has found it. I cannot surmise where it went, unless it went for family use."

Thus, the trial court accepted Mrs. Garrelts's testimony in this regard without allowing cross-examination by opposing counsel. This was error.

It has long been held in criminal cases that a witness can stand upon his constitutional right and refuse to answer any questions which might tend to incriminate him, but a witness who voluntarily testifies in his or her own defense thereby waives such right and can be subjected to cross-examination concerning the facts in the case as affecting his or her credibility. *People v Watson,* 307 Mich 596; 12 NW2d 476 (1943), *cert den* 323 US 749; 65 S Ct 81; 89 L Ed 600 (1944), *reh den* 323 US 815; 65 S Ct 127; 89 L Ed 648 (1944), *People v Hocquard,* 64 Mich App 331; 236 NW2d 72 (1975).

This principle has been held to apply in civil cases by the United States Supreme Court in *Brown v United States,* 356 US 148; 78 S Ct 622; 2 L Ed 2d 589 (1958), *reh den* 356 US 948; 78 S Ct 776; 2 L Ed 2d 822 (1958).

" '[A defendant] has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts.' (Citations omitted.) The reasoning of these cases applies to a witness *in any proceeding* who voluntarily takes the stand and offers testimony in his own behalf."

\* \* \*

"[W]hen a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably

claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Brown, supra,* 155-156. (Emphasis added.)

Mrs. Garrelts waived her privilege against self-incrimination by her testimony on her own behalf concerning what marital assets existed and what happened to the money earned during the marriage. *Brown, supra.*

Our decision in this regard makes it necessary to discuss but briefly Mr. Garrelts's other claims of error concerning the division of property.[1] The cause is reversed and remanded for a new trial as to the division of property only.

On remand, the trial court should note that:

"Striking the witness' testimony, or relying on the trier of fact to take into account the obvious unfairness of allowing the witness to escape cross-examination, must often in practice be poor substitutes for a positive showing under searching cross-examination that the testimony is in fact false." *Brown, supra,* 156, fn 5.

GCR 1963, 506.6(1) and MCL 600.1725; MSA 27A.1725 provide the preferred sanction available to the trial court, civil contempt. Other sanctions available are set forth in GCR 1963, 506.6(2).

[1] Contrary to defendant's assertion, the judgment did not find defendant guilty of contempt. Thus, we find no error on defendant's issue one. Issues four through seven concern the validity of the trial court's division of property. On remand, plaintiff's further testimony without benefit of privilege may or may not cause the trial court to divide the property differently than first ordered. Defendant's issues two and three are addressed in this opinion, *supra.*

Additionally, since Mr. Garrelts's attorney objects to being appointed co-receiver for the purpose of carrying out the court ordered sale of the farm and both parties are agreeable to the appointment of an independent receiver, on remand the trial court should appoint an independent receiver for the purpose of carrying out any court ordered sale of the farm.

Reversed and remanded.