PEOPLE v RUFF

Docket No. 51946. Submitted April 9, 1981, at Lansing.—Decided August 18, 1981.

Bradford L. Ruff pled guilty to unlawfully driving away a motor vehicle and to being an habitual offender, Livingston Circuit Court, Bert M. Hensick, J. He appeals, alleging that his conviction should be set aside because the prosecutor did not fulfill a prior, tentative plea-bargain agreement and that the circuit court erred in failing to quash the information charging him as an habitual offender on the ground that it was improperly filed. *Held:*

1. The defendant made a valid, knowing, and voluntary guilty plea which was properly entered by the circuit court. The plea waived any alleged defect with respect to the prior, tentative plea-bargain agreement.

2. The supplemental information was properly filed prior to the entry of defendant's plea.

Affirmed.

1. APPEAL — GUILTY PLEAS — PLEA BARGAINS — COURT RULES.

A valid, knowing, and voluntary guilty plea which is properly entered will not be set aside on appeal for the alleged failure of a prosecutor to fulfill the terms of a prior, tentative plea-bargain agreement where the record is devoid of support for the allegation (GCR 1963, 785.7).

2. PROSECUTING ATTORNEYS — HABITUAL OFFENDERS — SUPPLEMENTAL INFORMATIONS — NOTICE.

A prosecutor who has notice of a defendant's prior conviction must file a supplemental information charging the defendant as an habitual offender prior to the defendant's trial on a current felony charge in order to give the defendant fair notice in

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 867.

Defendant's appeal from plea conviction as affected by prosecutor's failure or refusal to dismiss other pending charges, pursuant to plea agreement, until expiration of time for appeal. 86 ALR3d 1262.

[2] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 19.

excess of that required by due process as a prophylactic measure to avoid even the appearance of prosecutorial impropriety.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Frank R. Del Vero,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*Lobur & Hensick, P.C.,* for defendant on appeal.

Before: CYNAR, P.J., and BRONSON and D. F. WALSH, JJ.

D. F. WALSH, J. On March 5, 1981, defendant pled guilty to the offense of unlawfully driving away a motor vehicle (UDAA), MCL 750.413; MSA 28.645, and to being a second felony offender, MCL 769.10; MSA 28.1082. He was sentenced to from 5 to 7-1/2 years in prison.

Defendant argues that his plea-based conviction should be set aside because an earlier, tentative plea-bargain agreement was not fulfilled by the prosecutor.

On December 18, 1979, defendant was arraigned in district court on the charge of unlawfully driving away a motor vehicle. At a proceeding in the district court on December 28, 1979, defense counsel indicated that a tentative plea-bargain agreement had been reached in which defendant agreed to give a statement to the police concerning uncharged offenses involving defendant or other individuals. Defendant agreed to submit to a polygraph examination to verify his statement. If verification was established, the prosecution agreed to charge defendant with the violation of an offense carrying a maximum sentence of four years imprisonment. If the polygraph results were negative, the prosecutor could proceed on the original

charge. Defendant also was granted immunity from prosecution for any information contained in the statement and agreed to an unconditional waiver of preliminary examination on any charge arising from the agreement.

Defendant then was bound over to the circuit court for an arraignment on January 21, 1980. The arraignment was subsequently waived by defendant. On January 22, 1980, the prosecutor filed a supplemental information charging defendant as a fourth felony offender, MCL 769.12; MSA 28.1084.

On March 5, 1980, defendant entered into another, totally separate plea agreement pursuant to which the instant plea of guilty was offered and accepted by the circuit court. The record of the March 5, 1980, plea-taking proceeding indicates that the court fully complied with the court rule. GCR 1963, 785.7. Defendant voluntarily entered his plea of guilty and admitted that he was guilty of the offenses. Defendant's contention that this March 5, 1980, guilty plea should be set aside because of an alleged failure on the part of the prosecutor to fulfill the earlier tentative plea agreement is without merit. Defendant abandoned that claim in the circuit court. The record before us is devoid of any evidentiary support for it. We are precluded from considering it. *People v Serr,* 73 Mich App 19; 250 NW2d 535 (1976). Moreover, by entering a valid, knowing, and voluntary guilty plea, defendant waived any alleged defect with respect to the prior tentative agreement.

Defendant next contends that the circuit court erred in failing to quash the supplemental information charging him as a fourth felony offender which was filed by the prosecutor on January 22, 1980. This supplemental information was filed (a)

25 days after the filing of the information charging the principal offense of UDAA and one day after the date scheduled for the arraignment on that information in the circuit court, (b) 43 days prior to defendant's plea-based conviction on the UDAA charge, and (c) 35 days after defendant's arraignment on the UDAA warrant in the district court. During this 35-day period prior to the filing of the supplemental information, plea negotiations were carried on which resulted in the original tentative plea-bargain agreement.

At issue is whether, under these circumstances, the supplemental information was filed "promptly" as required by *People v Fountain,* and its companion case *People v Jones,* 407 Mich 96, 98; 282 NW2d 168 (1979). More precisely the issue is whether *Fountain's* prompt filing requirement mandates that the supplemental information be filed "with the information which charged the last felony * * *", *id.,* 99, or "prior to the initiation of any plea negotiations", *People v Martin,* 100 Mich App 447, 459; 298 NW2d 900 (1980), or "prior to conviction on the current charge * * *", *People v Stratton,* 13 Mich App 350, 356; 164 NW2d 555 (1968).

We rule that *Fountain* requires that a prosecutor who has notice of a defendant's previous convictions must file a supplemental information charging the defendant as an habitual offender prior to the defendant's trial on a current felony charge. The effect of the *Fountain* decision was to make mandatory the procedure first announced in *Stratton, supra,* and later approved by the Supreme Court in *People v Hatt,* 384 Mich 302, 309; 181 NW2d 912 (1970).

In *Stratton, supra,* 356, a panel of this Court declared that:

"[W]here it appears to the prosecutor before conviction of the current charge that the accused person is a prior felon, the accused person is to be informed against as a prior offender *prior to conviction on the current charge* * * *." (Emphasis supplied.)

In *Hatt, supra,* the Supreme Court "approved" the *Stratton* procedure. In *People v Marshall,* 41 Mich App 66, 71-74; 199 NW2d 521 (1972), a panel of this Court held that it was not mandatory for a prosecutor to follow the *Stratton-Hatt* procedure unless failure to do so would deny the defendant due process of law.[1] This set the stage for *Fountain.*

The precise issue to be decided in *Fountain* was clearly stated by the Supreme Court at the very outset of its opinion:

"Is it permissible to enhance sentence under the habitual offenders act if the prosecutor has reliable information pertaining to a person's prior felony record before trial but does not charge the person as an habitual offender *until after conviction is entered on the current felony charge?"* (Footnote omitted.) (Emphasis supplied.) *Fountain, supra,* 97.

---

[1] In *Marshall, supra,* 71-73, the Court stated:

"The holding of *[In re Brazel,* 293 Mich 632; 292 NW 664 (1940)] and *Stratton* does not, however, make it mandatory on the part of the prosecutor to proceed against an accused as a subsequent offender prior to conviction, but is merely permissive in that it allows the prosecutor to so proceed.

* * *

"Clearly, the prosecutor has discretion to file a supplemental information under the habitual criminal act after conviction, and is not limited to filing such supplemental information prior to conviction of a current charge, where he has knowledge of the previous conviction."

However, the Court also stated:

"[W]here no good reason exists for the delay in filing a supplemental information charging the defendant as a subsequent offender, and the delay on the part of the prosecutor substantially prejudices defendant's rights, the filing of that supplemental information clearly denies defendant his right to due process of law." *Id.,* 74.

The Court resolved this issue in the negative. As authority for its decision, the Court cited *Hatt, supra,* and *Stratton, supra.*

Although later in the opinion the Court stated nondecisionally that in the cases of *Fountain* and *Jones* the "habitual offender charges *should have been filed* with the information which charged the last felony * * *" (emphasis supplied), *Fountain, supra,* 99, the Court did not rule that it was mandatory to do so. Moreover, we find nothing in the *Fountain* decision or in any of the decisions upon which it is premised which would preclude a prosecutor from proceeding on recidivist charges against a defendant because the supplemental information containing those charges was not filed simultaneously with the information charging the current offense as long as the supplemental information is filed before trial on the current offense.[2]

Further support for this interpretation of *Fountain's* prompt filing requirement can be found in the following statement from Justice LEVIN's concurring and dissenting opinion in *People v Young,* 410 Mich 363, 368; 301 NW2d 803 (1981), in which the Supreme Court ruled on the retroactivity of the *Fountain* rule:

"I would vacate the habitual offender charge and reinstate the original sentence or remand for resentencing in any case where a defendant with prior felony convictions was not charged as an habitual offender *until after conviction* of the current felony, subject to the prosecutor's right to show that he did not know, and should not have been on notice, of the prior convictions." (Emphasis supplied.)

---

[2] Because of the fact that the purpose for the *Fountain* rule is to avoid even the *appearance* of prosecutorial impropriety, a prosecutor would still be well-advised, despite our ruling in this case, to initiate recidivist proceedings at the earliest possible stage of the criminal process.

In *Martin, supra,* a panel of this Court, which included this writer, attempted to reconcile *Fountain* with *Marshall* and other pre-*Fountain* cases which related to the *Fountain* issue. We held that the purpose for the *Fountain* rule was two-fold, first, to provide fair notice to the accused and, second, to avoid the appearance of prosecutorial impropriety. We further held that with respect to the fair notice aspect of the *Fountain* decision, *Fountain* merely restated prior law.

That holding was based upon the premise that the fair notice purpose of *Fountain* referred to the notice required to be given to any defendant, both pre-*Fountain* and post-*Fountain,* by virtue of the right of every citizen to due process of law.[3] We concluded that insofar as the *Fountain* decision required that type of notice, it merely restated what had always been the law.[4]

With respect to the second purpose for the rule, *i.e.,* to avoid the appearance of prosecutorial im-

---

[3] In her concurring opinion, Chief Justice COLEMAN, joined by Justice RYAN, expressed some doubt that the result reached by the majority, at least in *Jones,* was statutorily or constitutionally required.

"Although the result in *Jones* may not be statutorily or constitutionally required, especially in the absence of any allegation or showing of prejudice from the delay, it is based on this Court's supervisory powers over the practices and procedures used in the courts of this state." (Footnote omitted.) *Fountain, supra,* 99-100 (COLEMAN, C.J., concurring).

[4] Our holding in *Martin* was also influenced by the fact that, with respect to the need for the prosecutor to proceed promptly, the Supreme Court did not state that it was establishing a new rule but rather indicated that it was applying the rule established previously in *Stratton, supra,* and *Hatt, supra.* Moreover, it described the *Stratton-Hatt* rule as a rule so well established that it recognized only one exception, *i.e.,* where the delay was due to the need to verify out-of-state convictions. *Fountain, supra,* 98-99. In *Young, supra,* 367, however, a majority of the Court described the rule applied in *Fountain* as a new rule established by the *Fountain* decision. "The rule *established* in *Fountain* is procedural in nature, mandating how a prosecutor must proceed when charging a defendant as an habitual offender pursuant to a supplemental information." (Emphasis supplied.)

propriety, we concluded that this purpose was separate from and independent of the notice purpose and required an even earlier filing of the supplemental information than was mandated by due process. We reasoned that to accomplish this purpose the Court was establishing a new prophylactic rule that required filing "with the information which charged the last felony" *(Fountain)* or at least "prior to the initiation of plea negotiations" *(Martin)* so that it would not appear that the prosecutor was using the threat of supplementation improperly for the purpose of coercing a plea.

In *Young, supra,* 367, however, the Supreme Court made it clear that the *Fountain* decision established a new procedural rule with a *single* purpose, *i.e.,* to avoid the appearance of prosecutorial impropriety.

> "The rule *established* in *Fountain* is procedural in nature * * *."
>
>         * * *
>
> "[t]he purpose of the rule is to avoid an appearance of prosecutorial impropriety * * *." (Emphasis supplied.)

Where *Fountain, supra,* 99, had said "to provide fair notice * * * *and* avoid an appearance of * * * impropriety", *Young, supra,* 367, said "to provide fair notice * * * *so as to* avoid the appearance of * * * impropriety * * *". (Emphasis supplied.)

The fair notice referred to in *Fountain,* therefore, is not the notice required by due process of law but rather a notice in excess of what is required by due process which the Court now requires prophylactically to avoid even the appearance of prosecutorial impropriety.

Since the premise on which we based our conclu-

sions in *Martin, supra,* is no longer valid, those conclusions are no longer valid. We are no longer persuaded, therefore, that a prosecutor who has knowledge of a defendant's prior felonies must file habitual offender charges simultaneously with the current charge or at least prior to the initiation of plea negotiations.

In this case since the supplemental information was filed nearly a month and a half prior to the entry of the guilty plea the *Fountain* rule was satisfied.

Affirmed.