**STATE of Missouri, Respondent,**

v.

**Jerry Wayne DANIELS, Appellant.**

**No. 12425.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 15, 1982.

John D. Ashcroft, Atty. Gen., Priscilla Gunn, Asst. Atty. Gen., Jefferson City, for respondent.

Robert R. Parrish, Acting Public Defender, Joplin, for appellant.

TITUS, Judge.

Defendant was jury convicted of the class D felony of escaping confinement while being held in the Jasper County jail on a felony charge. § 575.210–2(2)(a).[1] In accordance with the verdict, defendant was court-sentenced to incarceration for a term of two years.

The lone appeal issue is whether the trial court erred in failing to instruct upon defendant's affirmative defense that the escape was occasioned by duress and necessity. §§ 562.071 and 563.026. The last cited statute is especially relevant to the issues herein as it provides, under the caption of justification, the defense of necessity. This defense "involves a balancing test to be applied by ordinary standards of intelligence and morality to the desirability of avoiding the injury threatened to the public or private right against the injury sought to be prevented by the criminal act to which the defense is directed." *State v. Baker,* 598 S.W.2d 540, 544 (Mo.App.1980).

The limited defense of necessity exists and is available if the following conditions

---

1. Statutory references are to RSMo 1978.

are present: "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) There is no time or opportunity to resort to the courts; (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." *People v. Lovercamp,* 43 Cal.App.3d 823, 831–832, 118 Cal. Rptr. 110, 115[2], 69 A.L.R.3d 668 (1974). Except for the first condition, all such conditions were adopted in *People v. Hocquard,* 64 Mich.App. 331, 236 N.W.2d 72, 75–76[6] (1975). In *Hocquard* the first condition was said to be that the compulsion must be present, imminent and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done. A threat of future harm is not enough.

Predicated on *Lovercamp* and *Hocquard* and many others considered and cited in *State v. Baker,* supra, the *Baker* court, idem p. 545, found the following factors "to be important in the evidentiary matrix surrounding the defense: 1) a present and imminent danger, the definition of danger being based upon the facts of a defendant's confinement and the imminence of the danger not being solely based on a time interval but upon the entire fact situation; 2) exhaustion of remedies or evidence that attempts to do so had been futile and that the imminence of danger of threatened harm is such that no alternative is available; 3) evidence that the escapee did not use force or violence against innocent persons in perfecting the escape; 4) and a duty on the part of the escapee to surrender when the threatened danger has been avoided." Also, as observed in *Baker,* idem p. 546[3], "The defense [of necessity] should be submitted when the offered evidence, if believed by the jury, would support a finding by them that the offense of escape was

justified by a reasonable fear of death or bodily harm so imminent or emergent that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the public injury arising from the offense committed to avoid injury to the prisoner." Perhaps the second element in the three just cited cases should be expanded to include situations where the attitudes and hostilities of those having custody of defendant are such that it reasonably appears that not only would defendant's complaints to them be futile but would likely expose defendant to future bodily harm.

At trial the 40-year-old defendant herein admitted he escaped from the Jasper County jail the night of Wednesday April 8, 1981, where he was incarcerated awaiting trial on a charge of attempted robbery in the first degree. Prior thereto, defendant admittedly had been convicted of "Six or Seven" armed robberies and "Three, I think" escapes. According to defendant the escape in question had its genesis on a Sunday three weeks before the charged escape occurred when a deputy sheriff struck him on the head with a set of jail keys when a dispute arose as to whether defendant had overstayed his time in the visiting room with his wife. Defendant recounted that the blow rendered him unconscious and that when he regained his senses he found himself handcuffed, shackled and bleeding from a head wound. He asseverated he was left to bleed for about an hour before being taken to a hospital where five stitches were employed to close the wound. Defendant admitted that he had told no jail personnel of the key-striking incident and when asked by them what had occurred, he simply replied either "Nothing" or that he had fallen in the visiting room. The second incident, according to defendant, occurred about a week before the escape when he overheard two unidentified jailers say "If he does get a lawyer on this, we'll do away with him" and "We are going to make sure he won't testify against nobody." Defendant testified he did not try to discuss either

foregoing incident with any jail authority because "It would have made it a lot worse" and "I wasn't going to die there." The conclusion reached by defendant was that his only salvation lay in escaping, and when other inmates cut through the bars of a jail window on April 8 and escaped, he did likewise.

On Sunday April 12, 1981, or on the fourth day following the escape, Joplin police observed defendant driving an automobile in their bailiwick. Although defendant testified that he had no reason to run from the Joplin police because "They never done me no wrong," he nevertheless fled from them in his car and on foot. As defendant related, after the police had him in custody in their vehicle he did not tell them the reason for his escape because "I couldn't even hardly speak, I was out of breath . . . I was running." Defendant remained in police custody until the following Monday when he was returned to the county jail. Defendant told the court and jury that his wife and a lady "name of Spencer" had witnessed the Sunday beating at the county jail. However, neither averred witness appeared at trial.

As we must in considering the submissibility vel non of defendant's defense of necessity, we ignore all of the proffered testimony contradictory thereto. To us, and apparently to the trial judge, the glaring deficiency in the defense advanced herein is the total failure of any proof by defendant, or otherwise, that he did or attempted to report or surrender to a single police agency when he attained a position of safety from the averred threats of the Jasper County jail personnel. Defendant admittedly had no fear of the Joplin Police and offered no suggestion of fear from any authority save the sheriff's deputies. He had in excess of 72 hours following escape to surrender to a multitude of uninvolved law enforcement agencies free from harm, yet he not only failed to submit thereto after attaining a position of safety from the threatened danger he feared while lodged in the county jail, but he also tried to escape from the Joplin police whom he did not fear as they had "never done me no wrong." The trial judge obviously viewed the defense of necessity advanced in this case as unworthy of submission to the trier of the fact. We envision the defense likewise and affirm the action of the court nisi.

Judgment affirmed.

FLANIGAN, P.J., and GREENE and PREWITT, JJ., concur.