689 P.2d 188

**The STATE of Arizona, Appellee,**

v.

**Phillip Edward WOLF, Appellant.**

**No. 2 CA–CR 3316.**

Court of Appeals of Arizona,
Division 2.

Sept. 26, 1984.

Review Denied Jan. 8, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Wildermuth, Wildermuth & Roer by David M. Roer, Coolidge, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was tried to a jury, convicted, of escape and given a mitigated, consecutive sentence of four years' imprisonment. On appeal he challenges his conviction contending that the jury was improperly instructed and that the trial court erred in not granting his motion for acquittal.

Appellant was an inmate in the north unit, outside trustee area, at the Arizona State Prison at Florence, and after a head count at 10:20 p.m. on July 17, 1982, it was discovered that appellant and trustee Sprague were absent. A search was undertaken and the two were located at approximately 5 a.m. the next morning in a ditch culvert some five miles from the prison. The two were taken into custody and a pat down disclosed no money, weapons or pieces of paper on either.

Appellant's position at trial was that his escape was necessitated because of threats to his safety by other inmates. One inmate testified that while he had been at Perryville medium security prison with appellant, appellant was beaten several times by individuals associated with the Aryan Brotherhood, and that as a result of his association with appellant he was stabbed three times.

Another inmate testified that he knew of approximately 15 murders in the Arizona State Prison committed by the Aryan Brotherhood. Still another inmate testified that appellant had apparently been beaten prior to delivery to protective custody, and sustained injuries primarily to his face.

Capt. Jimenez, who was in charge of the north unit, outside trustee area, testified that on June 25, 1982, he observed four inmates assaulting appellant. He recalled his conversation with appellant after the assault concerning his being reclassified and placed, for his own safety, in protective custody. Capt. Jimenez indicated that he had no authority to place appellant in protective custody, but that this was a matter for the reclassification board.

Lt. Burger, disciplinary officer for the unit at the time, stated that all charges of assault against appellant arising out of the June 25, 1982, incident were dismissed because appellant was determined to be the victim. He explained that the apparent reason for the assault was an attempt to

extort certain personal property from appellant. Appellant testified that while he was in Perryville, he was labeled a "snitch" as a result of testimony he gave in Maricopa County Superior Court. After giving that testimony, he was assaulted in Perryville by members of the Aryan Brotherhood.

Immediately after the assault in the outside trustee area at the Arizona State Prison, appellant spoke with Capt. Jimenez concerning transfer to protective custody. Appellant testified that the captain informed him that he did not believe appellant needed to be placed in protective custody. He was thereafter held in administrative isolation until approximately July 13, 1982, when he was returned to the outside trustee area.

Appellant testified that on July 17, 1982, at about dusk, he was approached in the trustee area by four inmates who identified themselves as members of the Aryan Brotherhood. He was accused of being an informant against the inmates that assaulted him on June 25, 1982, and one of the four men displayed a large-caliber revolver, placed it to appellant's head and informed him that if he did not get out of the yard he would not live through the night. Appellant testified that the immediate fear of death caused him to depart at approximately 9:30 p.m. on July 17. He remained at large for about eight hours before being returned to custody.

## I

**DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY SUBMITTING ERRONEOUS JURY INSTRUCTIONS CONCERNING THE DEFENSE OF DURESS?**

**A. Did the trial court err by charging with the state's instruction number 10 instead of appellant's requested instruction number 13?**

Appellant argues that where an inmate has departed from custody for a period of less than 24 hours, it would not be reasonable to require him to return to custody before allowing a plea of coercion or neces-

sity, citing *State v. Mulalley*, 126 Ariz. 278, 614 P.2d 820 (1980). There, the Arizona Supreme Court found that there was no evidence of duress. Before reaching that conclusion, however, the court considered *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), where the court, dealing with defendants who had been gone for over a month, stated that they had to show willingness to return to custody as soon as coercive jail conditions were no longer present. Applying *Bailey* to the *Mulalley* facts, the Arizona Supreme Court stated:

"In the instant case, the defendant was gone for less than 24 hours. Because he did not have time to present himself for reincarceration, it would not be reasonable to require him to return to custody before allowing a plea of coercion and necessity." 126 Ariz. at 282, 614 P.2d 820.

In the case at bar, the prosecution submitted its instruction number 10, which provided:

"An escape from prison is justified if each of the following conditions exist:

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is not time for a complaint to authorities or there exists a history of futile complaints;

(3) There is not time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used toward prison personnel or others; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."

The court, sua sponte, modified the instruction to delete paragraph 4 on the basis that it had no applicability to the facts at bar. Appellant contends that pursuant to Mulalley, supra, the use of the duress instruction does not require evidence of the "return to custody" element when an in-

mate is at large for a short period of time. As in *Mulalley*, appellant was at large for only eight hours prior to his return to physical custody. Appellant submits that, unlike *Mulalley*, he had been exposed to threats and assaults by other prisoners and that the evidence supported his position that his departure was motivated by fear of immediate physical injury or death. He also testified that he had unsuccessfully sought protection from the authorities. He argues that his requested instruction number 13 is an appropriate statement of duress as set forth in A.R.S. § 13–412, and should have been given instead of state's requested instruction number 10. Appellant's requested instruction number 13 provides:

"Conduct which would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the prescribed [sic] conduct by the threat or use of immediate physical force against his person, which resulted or could result in serious physical injury, which a reasonable person in the situation would not have resisted.

This defense is unavailable if the person intentionally, knowingly or recklessly placed himself in a situation in which it was probable that he would be subjected to duress."

■ We believe that the state's instruction number 10, as given, properly states the criteria applicable to the duress or necessity defense to the crime of escape. Public policy considerations take the crime of escape beyond the standard duress defense enunciated in A.R.S. § 13–411 and set forth in appellant's requested instruction number 13, supra. Because of the difficulties inherent in long-term housing and containment of criminals, a more stringent standard of duress, when applied to the crime of escape, is generally employed. For example, the rule has been stated and reiterated in Arizona:

"An escape is not justified on the ground that conditions of imprisonment are intolerable and inhumane so as to give the prisoner or escapee reason to believe or fear for his personal safety." *State v. Alberigo*, 109 Ariz. 294, 508 P.2d 1156 (1973), reaff'd in *State v. Mulalley*, supra.

The court in *Mulalley* notes that some language in *United States v. Bailey*, supra, suggests that if conditions were sufficiently bad, duress or necessity would be a valid defense. In *Mulalley*, no duress instruction was given. The Arizona Supreme Court found that there was no need for it to have been given since the evidence did not justify it. The court concluded that it could consider the sufficiency of the evidence to justify it in spite of the lack of showing by the defendant of a willingness to return to custody as soon as the coercive jail conditions were no longer present, because the defendant had been gone for less than 24 hours. We do not interpret the *Mulalley* opinion to dispense categorically with a showing of willingness to return to custody. Rather, it expressed an inclination to consider the defense of duress and necessity even in the absence of the defendant's evidence of willingness to return to custody as soon as coercive jail conditions were no longer present, in view of the short period of absence. In the instant case, the duress and necessity instruction was given and appears to have been skillfully utilized by defense counsel in argument.

■ Appellant takes issue particularly with the portion of the instruction requiring that he "immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." The instruction was derived from *State v. Horn*, 566 P.2d 1378 (Haw.1977). We believe that a jury question is presented on the issue even considering the short time during which appellant was at liberty. Appellant's position was that he escaped from a specific threat, and not general conditions. Bringing attention to that threat could, it would seem, have been accomplished within a very short period of time.

**B. Did the trial court commit error by charging the jury with the state's requested instruction number 12 and refusing**

**appellant's requested instruction number 12?**

The state's requested instruction number 12 provided:

> "Escape in the second degree requires that a person knowingly escape from a correctional facility. An escape is not justified on the grounds that conditions of imprisonment are intolerable."

The second sentence of the state's instruction was derived from *State v. Alberigo*, supra. Appellant argues that the jury was instructed that certain elements must be shown to justify departure from custody, and that these were delineated in state's instruction number 10, supra. Appellant argues that when state's requested instruction number 12 is considered with state's requested instruction number 10, that the jury is told that conditions of imprisonment are no ground for departure from custody after having been told that certain elements do justify departure. Appellant submits that the jury instructions were conflicting and misleading to the jury.

■ The state's instruction number 12 told the jurors that the crime of escape requires the escapee to act knowingly. This represents the entirety of appellant's requested instruction number 12 and, thus, there was no omission from declining appellant's number 12. It is generally agreed by both parties that the general prison conditions were not a factor in the escape. Cf., *State v. Alberigo*, supra. The specific inmate threat was given as the justification for the escape, and it was in connection with that threat that appellant presented his defense of duress, i.e., the threat justified the escape. The court instructed the jurors that some instructions may not apply once the facts are determined. Since the facts did not involve general prison conditions and, viewing the instructions as a whole, we find no reason for jury confu-

sion in dealing with the problem presented under the facts of the instant case. The argument of defense counsel demonstrates that he was readily able to focus on the points of emphasis underpinning his duress defense. The decision of the jury appears to have been based entirely upon its resolution of the question of credibility of the witnesses appearing before it.

## II

## DID THE TRIAL COURT ERR BY REFUSING TO INSTRUCT THE JURY AS TO THE REQUISITE MENTAL INTENT NECESSARY TO COMMIT THE CRIME OF ESCAPE?

Appellant contends that the trial court should have given his requested instruction number 14 which provided:

> "To prove the crime of escape, the State must prove beyond a reasonable doubt that in the mind of the Defendant the specific intent to voluntarily leave lawful custody with the intent to evade the due course of justice and that unless such intent is proven, the crime of escape is not committed."

The instruction was derived from *State v. Alberigo*, supra, which case indicates that in the year 1973, escape was a specific intent crime with the specific intent being the avoidance of due course of justice.

■ The trial court stated that the desired concept had been covered by other instructions. State's requested instruction number 12 requires that the escape be done knowingly. This mental state is the intent required under the present statute, which was revised since the 1973 case relied upon by appellant.[1]

We find that the instruction given was in compliance with the new criminal code.

---

1. "A person commits escape in the second degree by knowingly escaping from custody imposed as a result of having been found guilty of a felony." A.R.S. § 13–2503(A)(2). The statutory definition of escape provides:

"'Escape' means departure from custody or from a correctional facility in which a person is held or detained with knowledge that such departure is unpermitted ...." A.R.S. § 13–2501(4).

## 250

### III

### DID THE TRIAL COURT ERR BY NOT GRANTING APPELLANT'S RULE 20 MOTION FOR A JUDGMENT OF ACQUITTAL?

Appellant contends that the prosecution, during its case in chief, neglected to present evidence that appellant had departed without authority or permission as required by the statute defining escape. A.R.S. § 13–2501(4). Accordingly, appellant moved for a judgment of acquittal on that basis at the close of the state's case. The motion was denied.

Appellant contends that the prosecution neglected to ask whether the appellant's absence was without permission and that an essential element of the crime was thus ignored by the prosecution.

■ A prison guard testified that appellant was serving time at the prison at the time of the escape. The guards determined that appellant had left the prison and that he was "missing," and that word was sent out that an "escape" had taken place. The trial evidence reflects upon appellant's absence from prison to be without permission. Indeed, he has attempted to justify his departure through necessity or duress. The trial court properly denied the motion for judgment of acquittal.

Affirmed.

BIRDSALL, C.J., and HOWARD, J., concur.