**Harry Jack SPAKES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–94–0202–CR.

Court of Appeals of Texas, Amarillo.

Dec. 19, 1994.

Discretionary Review Refused March 22, 1995.

Discretionary Review Granted April 5, 1995.

William E. Kelly, III, Canyon, for appellant.

Randall L. Sherrod, Dist. Atty., Jack L. Owen, Asst. Dist. Atty., Canyon, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In this appeal, appellant Harry Jack Spakes attacks his conviction for the offense of escape, a third degree felony. The ensuing punishment, enhanced by virtue of two previous felony convictions, was assessed by the trial jury at sixty (60) years confinement in the Institutional Division of the Texas Department of Criminal Justice. In two points of error, appellant contends the trial court erred in (1) excluding the defense of necessity in its jury charge; and (2) admitting, during the punishment hearing, evidence of a prior conviction which was not shown to be final. For reasons later expressed, we reverse the judgment of the trial court.

In support of his first point, appellant primarily relies upon his own trial testimony. That reliance requires us to review, in some detail, the relevant testimony.

Appellant averred that while he was confined in the Potter County jail in 1991, he successfully filed a grievance against a cor-

rections officer who was thereafter demoted. Appellant was transferred to the Randall County jail in November 1992. Prior to his transfer, appellant was told by a Potter County corrections officer that the demoted officer had friends in the Randall County jail and, if appellant were transferred there, "he (appellant) wouldn't make it out of here alive."

Appellant said he expressed his fears about being transferred to his wife, attorney, and the officer transferring him from Potter County who assured him he would have an audience with Sergeant Sluder, the Randall County jail supervisor. Two days after his transfer, appellant met with Sluder and informed him of his fear that he might be killed in the Randall County jail. Sluder responded that appellant would be placed in a jail section which housed more inmates as the risk of an incident would be less and so that Sluder could keep an eye on him better.

For four weeks after appellant's conversation with Sluder, no incidents occurred while he was being held in section DM–15. However, during that period, appellant filed writs against Randall County, a lawsuit against Randall and Potter Counties, and assisted other prisoners with their legal matters. This practice, he noted, was frowned upon by the corrections officers. On December 4, 1992, without warning or explanation, correction officers entered his cell after "lights out" and transferred him to cell D–4, which contained three capital murder suspects.

Appellant believed he was being punished by this cell transfer and cites testimony by Sluder that during the four-week period prior to the move, no disciplinary reports had been filed against him by corrections officers, nor had any grievances been filed against him by other inmates. On December 4, 1992, as a result of the cell transfer, appellant filed a grievance. Although such grievances are ordinarily answered within seventy-two hours, Sluder did not reply to this grievance until seven or eight days later. According to appellant, other than the grievance procedure, there was no other practical way to communicate his fears because, although the cells have emergency communication buttons, he was afraid his cell mates could overhear any attempt he made to talk to the authorities by use of the emergency communication.

Three days before the escape giving rise to this prosecution, appellant was told by his cell mates of the planned escape. The cell mates threatened to cut his throat if he did not accompany them because they feared he would inform the corrections officers of their escape. Because of the crimes with which his cell mates were charged (one of his cell mates having bragged about chopping up his girlfriend with an axe), appellant believed they would not fail to carry out their threat.

Appellant's explanation for not telling the corrections officers about the projected escape attempt was that he thought it probable that he was being "set-up" to be killed if he told. In support of that position, and in explanation of Sluder's prior testimony that appellant had told him the week after filing the grievance that he was no longer upset about his cell transfer, appellant emphasizes Sluder's acknowledgement on cross-examination that it was "possible" that a prisoner would not inform officers of a planned escape if the prisoner were in a cell with cell mates who had threatened his life if he told of the escape plan.

After the escape, and after separating from the other escapees, appellant approached the Suburban Bible Church between Amarillo and Canyon. He testified that he asked a woman waiting in the church parking lot "if [he] could get some help" and some water. She replied that there were people in the church that would help him and that he could get some water inside.

Coincidentally, there were two off-duty police officers in the church who recognized appellant and arrested him. Under cross-examination, when asked why he did not turn himself in to the authorities during the twelve-hour period he was separated from the others, appellant's only explanation was "I don't trust them. This was when I didn't trust anybody."

Section 9.22 of the Texas Penal Code provides, in relevant part:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex.Penal Code Ann. § 9.22 (Vernon 1994). There is a paucity of cases in Texas considering if, when, and how this necessity defense is applicable to the offense of escape. In support of his position that he is entitled to such a defense, appellant cites, and primarily relies upon, the decisions in *Thiel v. State,* 676 S.W.2d 593 (Tex.Crim.App.1984); *Williams v. State,* 630 S.W.2d 640 (Tex.Crim. App.1982); *Branson v. State,* 525 S.W.2d 187 (Tex.Crim.App.1975); and *Thomas v. State,* 662 S.W.2d 677 (Tex.App.—Dallas 1983), *aff'd,* 678 S.W.2d 82 (Tex.Crim.App.1984). However, of these cases, only *Thiel* and *Branson* deal with the question now before us.

In the *Branson* case, the Texas Court of Criminal Appeals, without specifically discussing whether the defense of necessity is available in an escape case, rejected the contention that sordid jail conditions and the desire to seek the aid of counsel entitles an escapee to a charge on the necessity defense. *Branson,* 525 S.W.2d at 188. En route to that conclusion, the court noted that the common law "appears to have recognized that there was a possible defense to the crime of escape" in extreme cases. The court did not expressly deny that a necessity defense might be one of those possible defenses. Therefore, even if it did not do so explicitly, inferentially the court recognized that in a proper case, the defense of necessity might be available.

In the *Thiel* case, writing upon the State's motion for rehearing, the court considered a point of error in which the appellant argued the trial court erred "in refusing to recognize the standard necessity/duress defenses to the offense of escape, defenses which would affirmatively justify or excuse appellant's actions." *Thiel,* 676 S.W.2d at 595. Initially, the majority noted a variance between the asserted point of error and the argument advanced under the point and held that it was impossible to appraise the point supposedly advanced. The majority further commented, again without specifically discussing whether the necessity defense was available in an escape case, that the defendant had offered no evidence of a bona fide effort to surrender or return to custody as soon as any claimed necessity for escape had passed. The court then noted the holding in *United States v. Bailey,* 444 U.S. 394, 412, 100 S.Ct. 624, 635, 62 L.Ed.2d 575 (1980), that such evidence was an indispensable element of evidence justifying a necessity defense to the crime of escape and held the defendant's point of error to be without merit. *Id.*

In a concurring and dissenting opinion, Judge Teague had no difficulty recognizing that the court was presented with the question of the availability of a necessity defense in an escape case. *Id.* at 596. He dissented from the majority's failure to discuss whether such a defense was available and whether the trial court erred in excluding testimony relative to a justification defense. *Id.* at 598. To that opinion, Judge Teague attached the first opinion delivered in the case, which had subsequently been withdrawn, in which the court concluded the necessity defense was available in an escape case in limited circumstances. *Id.* at 598–601.

In *Fitzgerald v. State,* 782 S.W.2d 876 (Tex.Crim.App.1990), an escape case in which the necessity defense was raised, the court noted that Texas formerly did not have a statute recognizing the general principle of the necessity defense except in special limited circumstances. *Id.* at 884. However, the court commented that section 9.22 of the Texas Penal Code had now firmly established its existence and spelled out the details of its application. Even so, the court noted "it is still a general principle, admitting its application on an ad hoc determination of 'the myriad variety of harms to avoid which a person is justified in committing an offense.'" Significantly, the court went on to say that it "seems to have accepted that in compelling enough circumstances an escape may be justified...." Thus, by a process of gradual evolution, it now appears to be established that in a proper escape case, the necessity defense of section 9.22 is available.

■ In determining whether this case involves one of "the myriad variety of harms to

avoid which a person is justified in committing an offense" referred to by the *Fitzgerald* court, we find the court's decision in the seminal case of *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1975) most helpful. In that case, the court held a prisoner's escape from custody was justified when five conditions were met. Those conditions are:

(1) the prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) there is no time or opportunity to resort to the courts;

(4) there is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

(5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

The *Lovercamp* court's approach has been cited with approval and adopted by several jurisdictions. Philip David Webb, Comment, *Necessity as a Defense to Prison Escape in Texas*, 21 S.Tex.L.J. 211, 213 (1981). However, the *Lovercamp* court's approach of adopting specific and carefully defined evidentiary elements to show entitlement to a charge on a necessity defense in an escape case has also been rejected by several courts. These courts take the position that the conditions articulated by the *Lovercamp* court are matters bearing on the weight and credibility of a defendant's testimony and, although relevant factors to be used in assessing claims of necessity, are not necessary to establish a meritorious necessity defense. *See Esquibel v. State*, 91 N.M. 498, 576 P.2d 1129, 1132 (1978); *People v. Unger*, 66 Ill.2d 333, 5 Ill.Dec. 848, 852, 362 N.E.2d 319, 323 (1977).

In *Acosta v. State*, 660 S.W.2d 611 (Tex. App.—Corpus Christi 1983, no pet.), the defendant was also charged with escape. He contended the trial court reversibly erred in refusing to instruct the jury on his defense that he escaped because he feared he would die from inadequate medical treatment for a bleeding ulcer while he was in the county jail. *Id.* at 613. The court noted that the instruction the defendant submitted to the trial court for inclusion in the charge was phrased in terms of the duress defense provided by section 8.05 of the Texas Penal Code. *Id.* at 613–14. However, the court opined, the applicable defense for the set of facts in the case was the necessity defense provided by section 9.22 and "the proper request ... would have inquired whether the appellant escaped from jail in order to save his own life." *Id.* at 614. En route to its decision that the defendant was not entitled to the necessity defense as there was no evidence that he believed his escape necessary to prevent harm to himself, the *Acosta* court, in a footnote and without other relevant comment, noted that several jurisdictions had adopted the *Lovercamp* test. *Id.* at 614 n. 1.

In the instant case, the State suggests appellant's failure to show that he made a bona fide effort to return to custody as soon as he separated from his cell mates prevents his entitlement to claim a necessity defense. In support of this proposition, the State refers to the passing reference by the *Thiel* court to the failure of the defendant in that case to show such a return and to the *Acosta* court's reference, also in passing, to the *Lovercamp* test.

■ Our study of the question convinces us that it is presently established that a section 9.22 necessity defense is available in a proper defense case. Although the test formulated in *Lovercamp* seems reasonable, it would be an impermissible addendum to section 9.22 requirements, in view of the language of that statute, for us to hold that the availability of the necessity defense is expressly conditioned upon the five elements set forth in *Lovercamp*. That question was not presented to, considered, or discussed by either the *Thiel* or the *Acosta* courts and we do not consider their passing references as precedent authority. Thus, we agree with those courts which have held that evidence bearing upon the existence or absence of any of the *Lovercamp* conditions is only relevant to the proof or disproof of the necessity claim and the determination of the defendant's credibility in making that claim.

■ It is well established that a defendant is entitled to an affirmative defensive instruction on every issue raised by the evi-

dence regardless of whether it is strong, feeble, unimpeached or contradicted and even if the trial court is of the opinion that the testimony is not entitled to belief. *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex. Crim.App.1978). The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Id.* at 934.

■ Thus, having made the decision that the necessity defense is available in an escape case, it next becomes necessary for us to decide if the evidence in this case was sufficient to require the submission of that defense in the charge. Our review of the evidence convinces us that appellant's testimony was sufficient to require the submission of the defense to the jury. A proper objection having been made, the failure to submit the question presents reversible error. Appellant's first point of error is sustained. Since the matter discussed in appellant's second point will not likely occur upon retrial, discussion of that point is not required.

Accordingly, the judgment of the trial court is reversed and the cause remanded to that court.