**Harry Jack SPAKES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0087–95.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 10, 1996.

William E. Kelly, III, Canyon, for appellant.

John L. Owen, Asst. Dist. Atty., Canyon, Jeffrey L. Van Horn, Asst. State's Attorney, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

PER CURIAM.

A jury convicted Appellant of escape and assessed his punishment at sixty years imprisonment after finding that he was a habitual offender. This conviction was reversed because the trial court failed to submit a requested instruction on the defense of necessity. *Spakes v. State,* 891 S.W.2d 7 (Tex. App.—Amarillo 1994).

The State's petition was granted to determine whether a predicate to the defense of necessity, as applicable to the offense of escape, includes an attempt to surrender once the immediate threat justifying the escape has ceased. The State notes that numerous other jurisdictions have imposed this requirement based on an analysis conducted in *People v. Lovercamp,* 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1975).

Texas adopted the current penal code in 1973, incorporating within it several common law defenses, including necessity and duress. V.T.C.A. Penal Code, § 9.22 (Necessity) provides that conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

V.T.C.A. Penal Code, § 9.02, dictates: "It is a defense to prosecution that the conduct in question is justified under this chapter," and § 2.03 states:

(a) A defense to prosecution for an offense in this code is so labeled by the phrase: "It is a defense to prosecution...."

\*     \*     \*     \*     \*     \*

(c) The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense.

(d) If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.

(e) A ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense.

V.T.C.A. Penal Code, § 38.07, at the time this offense was committed provided:

(a) A person commits an offense if he escapes from custody when he is:

(1) under arrest for, charged with, or convicted of an offense; or

(2) in custody pursuant to a lawful order of a court.

As can be seen, "a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear." Although the State presents several cogent arguments as to why an attempt to surrender should be a prerequisite to applying a necessity defense to the offense of escape,\* these arguments are appropriate for the legislature, not for the judiciary. The plain language codifying the necessity defense evinces a legislative intent that the defense apply to all offenses unless the legislature has specifically excluded it from them. As the Court of Appeals held, "Although the test formulated in *Lovercamp* seems reasonable, it would be an impermissible addendum to section 9.22 requirements, in view of the language of that statute, for us to hold that the availability of the necessity defense is expressly conditioned upon the five elements set forth in *Lovercamp*." We therefore conclude that a person accused of escape need not present evidence of an attempted surrender before a necessity instruction is required, if some evidence otherwise complying with § 9.22 has been presented.

The judgment of the Court of Appeals is affirmed.

WHITE, J., concurs.

KELLER, Judge, dissenting.

The majority holds that an attempt to surrender is not a predicate to the necessity defense in a prosecution for the offense of escape. The majority reaches this conclusion by reasoning that, because escape is not a continuing offense, an inmate's departure may be justified merely by the circumstances that exist at the time he initially leaves custody, regardless of whether he attempts to return to custody after those circumstances dissipate. Under the majority's analysis, a convict is free to stay at large forever, so long as his initial departure was immediately necessary to avoid imminent harm. I disagree.

---

\* The State Prosecuting Attorney argues that escape is a continuing offense. Therefore, if at any time while a defendant is in the status of an escapee the threat of imminent harm that made it immediately necessary for him to abscond should dissipate, the defense of necessity should not be available to him unless he immediately turns himself in. However, we have already rejected the State's premise. In *Lawhorn v.*

*State*, 898 S.W.2d 886, at 890 (Tex.Cr.App.1995), we held that the offense of escape as defined in V.T.C.A. Penal Code, § 38.07, is *not* a continuing offense. As the statutes now plainly read, so long as a defendant presents evidence that his initial departure from custody was occasioned by the immediate necessity to avoid imminent harm, he is entitled to an instruction on the defense of necessity.

The necessity defense consists of three elements, all of which must be satisfied:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Texas Penal Code § 9.22. While the majority opinion clearly addresses the first and third elements, I believe that it has failed to properly take into account the second element. The second element requires an assessment of the policy reasons for taking a particular action and balances the interests of society versus those of the individual. In balancing these competing interests, I would submit that the harm the individual seeks to avoid in escaping custody *never* outweighs the harm the law seeks to prevent *unless* the individual returns (or attempts to return) to custody after the danger motivating his departure has passed.

The majority apparently believes that the balancing of interests can take into account only the facts that exist at the time the escape is complete. But, nothing in the language of the second element requires that the balancing of interests be limited to the timeframe in which the offense occurs. There exist examples in the Penal Code that expressly contemplate a defense being established by events occurring after the completion of an offense. The renunciation defense to solicitation must occur after all the elements of the solicitation offense are satisfied.

*See* Texas Penal Code § 15.04(b). Moreover, the provision reducing the punishment for kidnapping if the victim is released in a "safe place" has been analyzed like a defense. *Williams v. State*, 851 S.W.2d 282, 286 (Tex. Crim.App.1993).[1] Obviously, the "release in a safe place" must occur after the elements of the kidnapping are complete.[2]

The necessity defense is really the ultimate catch-all provision for criminal defenses. It is used to judge extreme situations that ought to constitute a defense but have not been specifically provided for by the legislature. While it may not always be appropriate to look beyond the timeframe of the offense itself when assessing competing interests, when it is appropriate, we should not hesitate to do so. I believe that this case presents the latter situation.

Although the issue appears to be one of first impression in Texas,[3] the Court's opinion is at odds with the majority of jurisdictions that have addressed the issue. Most jurisdictions (thirty) require an attempt to surrender or report to the authorities (assuming there is time to do so) as a precondition for asserting justification-type defenses: California, *People v. Lovercamp*, 43 Cal. App.3d 823, 118 Cal.Rptr. 110, 115 (4 Dist. 1974) (necessity); Federal, *United States v. Bailey*, 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980) (necessity and duress); Alabama, *Dietz v. State*, 474 So.2d 120, 125–126 (Ala.Crim.App.1984), *reversed on other grounds*, 474 So.2d 127 (Ala.1985) (duress); Alaska, *Wells v. State*, 687 P.2d 346, 349–350 (Alaska App.1984) (necessity); Arizona, *State v. Wolf*, 142 Ariz. 245, 689 P.2d 188, 191 (App.1984) (duress); Colorado, *People v. McKnight*, 626 P.2d 678, 681 (Colo.1981) (choice of evils); Connecticut, *State v. Woods*, 23 Conn.App. 615, 583 A.2d 639, 642 (1990)

---

1. In 1994, the legislature amended the statute to make the issue similar to an *affirmative* defense. *See* Texas Penal Code § 20.04(c). This amendment does not affect the analysis in this opinion.

2. I am aware that kidnapping is a continuing offense. The analogy still applies because, at some point in time, the kidnapping is complete while *the elements of the defense do not yet exist*. Hence, the defense applies retroactively to criminal activity that occurred before the defense was established.

3. In *Thiel v. State*, 676 S.W.2d 593, 595 (Tex. Crim.App.1984), we "observed" that the appellant in that case had "offered no evidence of a bona fide effort to surrender or return to custody as soon as any claimed necessity for escape had passed." This "observation" was clearly *dicta*, as we held the error had not been preserved for review. *Id.*

(necessity); Delaware, *Johnson v. State*, 379 A.2d 1129, 1131 (Del.1977) (justification); Florida, *State v. Alcantaro*, 407 So.2d 922, 925 (Fla.App. 1 Dist.1981), *pet. for review denied*, 413 So.2d 875 (Fla.1982) (necessity or duress); Hawaii, *State v. Horn*, 58 Haw. 252, 566 P.2d 1378, 1379–1380 (1977) (choice of evils also known as necessity) [4]; Iowa, *State v. Reese*, 272 N.W.2d 863, 866 (Iowa 1978) (necessity); Kansas, *State v. Irons*, 250 Kan. 302, 827 P.2d 722, 726 (1992) (compulsion); Louisiana, *State v. Boleyn*, 328 So.2d 95, 97 (La.1976) (necessity); Maryland, *Craddock v. State*, 47 Md.App. 513, 424 A.2d 168, 169 (1981) (necessity and duress); Mississippi, *Corley v. State*, 536 So.2d 1314, 1317–1318 (Miss.1988) (necessity); Montana, *State v. Ottwell*, 240 Mont. 376, 784 P.2d 402, 404 (1989) (necessity); Nebraska, *State v. Reed*, 205 Neb. 45, 286 N.W.2d 111, 114 (1979) (necessity or duress); Nevada, *Jorgensen v. State*, 100 Nev. 541, 688 P.2d 308, 309–310 (1984) (necessity); New Jersey, *State v. Saxon*, 226 N.J.Super. 653, 545 A.2d 255, 256 (L.1988), *aff'd sub. nom.*, *State v. Morris*, 242 N.J.Super. 532, 577 A.2d 852 (A.D.), *cert. denied*, 122 N.J. 408, 585 A.2d 405 (1990) (duress); New York, *People v. Brown*, 68 A.D.2d 503, 417 N.Y.S.2d 966, 972–973 (N.Y.A.D., 2 Dept.1979) (justification also known as necessity); North Carolina, *State v. Watts*, 60 N.C.App. 191, 298 S.E.2d 436, 437 (1982) (duress); Ohio, *State v. Cross*, 58 Ohio St.2d 482, 485–489, 391 N.E.2d 319, 322–323 (1979) (necessity or duress); Oklahoma, *Johnson v. State*, 745 P.2d 1193, 1193 (Okl.Crim.App.1987) (duress or involuntary escape); Pennsylvania, *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583, 589 (1982), *citing*, *Commonwealth v. Clark*, 287 Pa.Super. 13, 429 A.2d 695, 697 (1981), *citing*, *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166, 1172 (Super.1979) (duress); South Carolina, *State v. Henderson*, 298 S.C. 331, 380 S.E.2d 817, 817–818 (1989) (necessity); Tennessee, *State v. Culp*, 900 S.W.2d 707, 710 (Tenn.Crim.App.1994) (necessity); Utah, *State v. Tuttle*, 730 P.2d 630, 634–635 (Utah 1986) (duress); Washington, *State v. Niemczyk*, 31 Wash.App. 803, 644 P.2d 759, 762 n. 3 (1982) (necessity); Wiscon-

sin, *State v. Herriges*, 155 Wis.2d 297, 455 N.W.2d 635, 639 (Wis.App.), *review denied*, 457 N.W.2d 324 (Wis.1990) (self-defense); District of Columbia, *Stewart v. United States*, 370 A.2d 1374, 1377 (D.C.App.1977) (duress). Two states have conflicting opinions on whether an attempt to surrender or report is an absolute requirement or merely a factor to be considered: Illinois, *People v. Unger*, 66 Ill.2d 333, 5 Ill.Dec. 848, 852, 362 N.E.2d 319, 323 (Ill.1977) (necessity; only a factor), *But see Id.* 5 Ill.Dec. at 853–854, 362 N.E.2d at 324–325 (Underwood, J. dissenting) (strict adherence to *Lovercamp*), *People v. Scott*, 194 Ill.App.3d 634, 141 Ill.Dec. 295, 299, 551 N.E.2d 288, 292 (1 Dist.1990), *appeal denied*, 132 Ill.2d 552, 144 Ill.Dec. 264, 555 N.E.2d 383 (1990) (necessity; attempt to surrender is an absolute requirement, holding that *Bailey* modifies *Unger*); Missouri, *State v. Baker*, 598 S.W.2d 540, 546 (Mo.App., W.D. 1980) (necessity; only a factor), *State v. Daniels*, 641 S.W.2d 488, 489–490 (Mo.App., S.D. 1982) (necessity; must report to authorities), *State v. Kirkland*, 684 S.W.2d 402, 405 (Mo. App.1984) and *State v. Simmons*, 861 S.W.2d 128, 131 (Mo.App., E.D.1993) (these decisions note but do not resolve the conflict between *Baker* and *Daniels*). Four states appear to have ambiguous or middle-of-the-road positions: Idaho, *State v. Mills*, 117 Idaho 534, 789 P.2d 530, 533 (App.1990) (necessity; imposes requirement that escapee show an *intent* to report to the authorities); Indiana, *Walker v. State*, 269 Ind. 346, 381 N.E.2d 88, 89 (1978) (necessity; suggesting duty to surrender, citing *Lovercamp*); Massachusetts, *Commonwealth v. Thurber*, 383 Mass. 328, 418 N.E.2d 1253, 1256 (1981) (necessity; *Lovercamp* requirements "should at least be taken into account"), *Commonwealth v. O'Malley*, 14 Mass.App.Ct. 314, 439 N.E.2d 832, 836 (1982), *review denied*, 387 Mass. 1102, 440 N.E.2d 1177 (1982) (expressing uncertainty about the scope of *Thurber*); New Mexico, *Esquibel v. State*, 91 N.M. 498, 576 P.2d 1129, 1132 (1978) (duress) (only factor going to weight and credibility), *State v. Castrillo*, 112 N.M. 766, 819 P.2d 1324, 1329 n. 3 (1991) (defense narrowed by Supreme Court

---

**4.** Hawaii statute now expressly incorporates elements substantially conforming to the require- ments outlined in the *Lovercamp* decision in its necessity defense. *See* H.R.S.A. § 703–302(3).

rule), SCRA 14–5132 (1986) (report or intent to report imposed; prongs of *Lovercamp* test adopted [except resort to courts] for offenses of escape and attempted escape).[5] Before today, only two states had unequivocally taken the position that an attempt to report or surrender is not an absolute requirement for invoking a justification-type defense: Michigan, *People v. Luther*, 394 Mich. 619, 232 N.W.2d 184, 187 (1975) (duress) [6]; South Dakota, *State v. Miller*, 313 N.W.2d 460, 462 (S.D.1981) (necessity). *But see Id.* at 463 (Wollman, C.J. concurring) (strict adherence to *Lovercamp* ).

Admittedly, several jurisdictions have held that the surrender requirement turns upon whether or not escape is a continuing offense. Probably the most prominent decision holding this view is the United States Supreme Court's *Bailey* opinion. 444 U.S. at 413, 100 S.Ct. at 636. The Court held that, because escape is a continuing offense under federal law, once the danger causing the necessity dissipates, there is no longer a defense to an ongoing crime. *Id.* Several other jurisdictions have adopted similar reasoning: Alaska, *Wells*, 687 P.2d at 349–350; Nevada, *Campbell v. Griffin*, 101 Nev. 718, 710 P.2d 70, 72 (1985), *cert. dism'd*, 476 U.S. 1154, 106 S.Ct. 2269, 90 L.Ed.2d 713; Wisconsin, *Herriges*, 455 N.W.2d at 639.[7] As does the majority opinion in this case, Michigan applies the reasoning conversely, holding that an attempt to surrender is unnecessary because escape is *not* a continuing offense in that state. *Mendoza*, 310 N.W.2d at 864.

But aside from the continuing offense distinction, there is another rationale for incorporating into the necessity defense a requirement to report to the authorities: considerations of public policy warrant imposing this requirement in order to balance adequately the interests of the individual against the interests of society. This is the rationale espoused in the California decision of *Lovercamp*, which is probably the leading case on the necessity defense to prison escape. *Lovercamp* established a five part test as a precondition for invoking the necessity defense:

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

118 Cal.Rptr. at 115. The court held that all five requirements must be satisfied to present a valid necessity defense. *Id.* The court emphasized that these requirements were

---

**5.** New Mexico may well be in line with the majority position if the "intent" to report clause is limited to the "attempted" escape situations, where there would obviously be no occasion to actually report since the escape is not complete.

**6.** Originally, Michigan authority was clouded. Shortly after *Luther*, the Michigan court of appeals adopted the *Lovercamp* test, including a requirement to report to the authorities. *People v. Hocquard*, 64 Mich.App. 331, 236 N.W.2d 72, 75–76 & 75 n. 5 (1975). The Court of Appeals subsequently reaffirmed that position. *People v. Martin*, 100 Mich.App. 447, 298 N.W.2d 900, 903 (1980). But, the Court of Appeals has since backtracked to the position announced by *Luther*, in part due to a subsequently enacted statute that lists the elements of the *Lovercamp* test as factors the court or jury "may consider." *People v.*

*Mendoza*, 108 Mich.App. 733, 310 N.W.2d 860 (1981). *See also* M.C.L.A. § 768.21B(4)(a)–(f).

**7.** Although it has not expressly relied upon continuing offense reasoning in caselaw in analyzing the necessity defense to prison escape, Colorado does statutorily define escape as a continuing offense. *See* C.R.S.A. § 18–8–201(2).

Alabama has recognized escape as a "continuing offense" for the purpose of establishing a justification defense but has refused to extend the continuing offense reasoning in a different context. *Harbin v. State*, 581 So.2d 1263, 1266 (Ala.Crim.App.1991) (the offense is only "continuing" in the sense that there is a duty to report after a justified departure; this fact does not enlarge the physical place where the escape occurred, nor does it expand a court's jurisdiction over the offense).

the result of a policy decision made by balancing the interests of the individual against the interests of society:

> In our ultimate conclusion it will be seen that we have adopted a position which gives reasonable consideration to both interests. While we conclude that under certain circumstances a defense of necessity may be proven by the defendant, at the same time we place rigid limitations on the viability of the defense in order to insure that the rights and interests of society will not be impinged upon. We have not formulated a new rule of law but rather have applied rules long ago established in a manner which effects fundamental justice.

*Id.* 118 Cal.Rptr. at 112. Subsequent interpretation in California affirms the public policy basis for *Lovercamp:* "We conclude that by definition, the *Lovercamp* defense is founded upon public policy and provides a justification distinct from the elements required to prove escape." *People v. Condley,* 69 Cal.App.3d 999, 138 Cal.Rptr. 515, 522 (4 Dist.1977).

The rationales in *Bailey* and *Lovercamp* starkly contrast each other. *Bailey* turns upon the nature of the offense of escape as a continuing offense: the offense of escape simply continues to occur even after the conditions substantiating the necessity defense have disappeared. Under this logic, a prisoner who refuses to surrender after the danger motivating his escape has passed has simply continued to commit the crime of escape at a time when he is no longer protected by the necessity umbrella. Under *Bailey,* there is no reason to balance the interests of society against those of the individual. Such an endeavor would be a pointless exercise. The *Lovercamp* balancing approach is instructive for precisely those jurisdictions that hold escape *not* to be a continuing offense. Only in those jurisdictions does the idea of balancing competing interests hold any meaning.

Moreover, of the thirty jurisdictions imposing a surrender requirement, only seven do not rely upon *Lovercamp* in doing so: Federal, *Bailey;* Alaska, *Wells;* Mississippi, *Corley;* New Jersey, *Saxon;* Oklahoma, *Johnson;* Wisconsin, *Herriges;* D.C., *Stewart.*[8] *See* authorities listed above. Not surprisingly, this list of seven contains three out of the four jurisdictions expressly relying upon the continuing offense rationale for imposing the requirement.

Several of the jurisdictions relying upon *Lovercamp* have carried the theme that the requirement to report to the authorities is a result of balancing the competing interests of the individual and society. Several states have emphasized that imposing a surrender requirement is necessary to minimize disruption of prison conditions. For example, the Arizona court stated:

> Public policy considerations take the crime of escape beyond the standard duress defense.... Because of the difficulties inherent in long-term housing and containment of criminals, a more stringent standard of duress, when applied to the crime of escape, is generally employed.

*Wolf,* 689 P.2d at 191 (ellipse inserted). A similar rationale has been elaborated in Connecticut:

> To maintain order in state correctional facilities and court lockups, and to avoid an invitation for facile excuses to attempt escapes from custody, the application of the necessity defense must be strictly interpreted.

*Woods,* 583 A.2d at 642 (concluding that *Lovercamp* must be adopted to preserve these policy interests). The court expressly based its holding upon a balancing approach:

> The rationale for applying more specific and stricter standards to the necessity defense in escape cases is to balance the public's interest in preventing escapes from legitimate detentions with the escaping prisoner's individual exigencies.

*Id.* 583 A.2d at 641–42. Similarly, the Iowa court remarked that imposing a surrender requirement "would at least in part answer

---

**8.** In *Wolf,* the Arizona court does not cite *Lovercamp* but relies upon Hawaii's decision in *Horn,* which does rely upon *Lovercamp.* 689 P.2d at 191. In *Brown,* the New York court held that its statute is the final benchmark on the parameters of the necessity defense but cited *Lovercamp* favorably. 417 N.Y.S.2d at 972.

the state's contention that the necessity defense would disrupt prison conditions." *Reese,* 272 N.W.2d at 867. Pennsylvania has also justified the imposition of a surrender requirement as an appropriate way to balance competing interests:

> Thus, where a defense to escape is allowed, the important interest in public safety must be balanced against the prisoner's need to resort to self-help by requiring that the escapee return to custody as soon as he is no longer under duress. [Citing *Lovercamp* ].

*Commonwealth v. Brothers,* 409 Pa.Super. 202, 597 A.2d 1164, 1169 (1991).

Clearly, at least some of these jurisdictions relied upon public policy considerations apart from the statutory language of the defense they were interpreting (especially for those jurisdictions interpreting the duress defense). We may well be more limited, as a *general* proposition, in interpreting our state's own statutory defenses. When a Texas statute is unambiguous, an appellate court must interpret it in accordance with the plain meaning of its words unless that interpretation would lead to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex.Crim.App.1991). But, even if we were to hold § 9.22 to be unambiguous, subsection (2) plainly requires the balancing of the individual's interests against those of society. Unlike any other provision of the Penal Code, the necessity defense expressly mandates the application of public policy considerations.

Moreover, such considerations need not be relegated to individualized factual determinations by criminal defendants. The balancing test "is a value determination. The defendant's belief is not necessarily relevant and certainly not controlling." *City of St. Louis v. Klocker,* 637 S.W.2d 174, 175–176 (Mo.App. E.D.1982) (trespass at abortion clinic). Nor should this value judgment be relegated solely to the jury. In some well-established fact-patterns, the value determination should be addressed by the courts, especially where establishing a uniform requirement would help to appropriately balance the competing interests involved. The American Law Institute, in its commentary on the Model Penal Code, takes this exact approach, viewing the surrender requirement as dictated by the balancing prong of the necessity defense [9]:

> The harm sought to be prevented by the law defining the offense may be viewed broadly enough to permit judicial attention to the effects on law enforcement of allowing the defense in the particular circumstances involved. For example a court could consider whether recognition of the defense when a prisoner has escaped to avoid assault would have the effect of substantially encouraging unjustified escapes. It may well be, however, that such possible encouragement could be sufficiently deflected by a requirement that actors who escape to avoid assaults must turn themselves in at the earliest safe opportunity. [Citing *Lovercamp* ].

American Law Institute, MODEL PENAL CODE AND COMMENTARIES, Part I, § 3.02 at 12 n. 5 (1985).

Moreover, several states that rely upon *Lovercamp* for imposing a surrender requirement have statutory definitions of escape that are materially identical to the Texas definition. Compare the Texas definition with those in Arizona, Kansas, and Louisiana.[10] Although this writer is unable to as-

---

**9.** The Model Penal Code's version of the defense is entitled "Justification Generally: Choice of Evils" and provides in relevant part as follows:

(1) Conduct that the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable, provided that:

(a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

(b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

American Law Institute, MODEL PENAL CODE AND COMMENTARIES, Part I, § 3.02 at 8 (1985).

**10.** Texas defines "escape" in relevant part as an "unauthorized departure from custody or failure to return to custody following temporary leave for a specific purpose or limited period...." Texas Code of Criminal Procedure, Article 38.01(2).

certain whether or not these states consider the offense of escape to be "continuing," all three states rely upon *Lovercamp,* and as noted above, Arizona has expressly articulated a public policy basis for limiting the necessity defense.

The above discussion illustrates the difference between the continuing offense cases (exemplified by *Bailey*) and the interest-balancing *Lovercamp* approach. While *Bailey* arrives at its conclusion by characterizing the *offense* of escape, *Lovercamp* arrives at its conclusion by characterizing the *defense* of necessity. Because the requirement to surrender (or attempt to do so) is contained within the balancing prong of the necessity defense, whether or not escape is a continuing offense is irrelevant. The interests of an escapee *never* outweigh the interests of society *unless* the escapee subsequently surrenders (or attempts to do so). I believe that the *Lovercamp* approach to the surrender requirement is both sound and supported by the great weight of authority. I would hold that a surrender or an attempted surrender (assuming there is an opportunity to do so) is a predicate to the necessity defense in an escape prosecution.

The cases of *Lawhorn v. State,* 898 S.W.2d 886 (Tex.Crim.App.1995) and *Fitzgerald v. State,* 782 S.W.2d 876 (Tex.Crim.App.1990) are distinguishable from the present case. In *Lawhorn,* the issue was whether escape could be an underlying felony for the offense of burglary of a habitation when a prisoner had departed from custody prior to entering the habitation. We held that the escape was complete upon departure from custody, and therefore, the escape was complete before the defendant entered the habitation. 898 S.W.2d at 890. Because the escape was complete before the defendant entered the habitation, the escape could not serve as the underlying felony for burglary. *Id.* at 890–892. *Lawhorn* did not involve the necessity defense; the balancing of an individual's interests against those of society was not in issue. The surrender requirement relates only to whether an escape is justified by necessity—not to when an escape occurs or is complete.

In *Fitzgerald,* this Court held that evidence of extraneous offenses committed after escape was not relevant to rebut the defendant's necessity defense. 782 S.W.2d at 883–885. The opinion addressed the first prong of the necessity defense—whether the defendant reasonably believed that his conduct was immediately necessary to avoid imminent harm. *Id.* at 885. We reasoned that an escapee's "reasonable belief" about the immediate danger must necessarily become fixed at the moment the offense of escape is complete. *Id.*

But the opinion in *Fitzgerald* does not address the *second* prong of the necessity defense—whether the desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law. The second prong, requiring a balancing of individual and societal interests, is not limited to the time at which the offense is complete. Moreover, there is an important reason that the commission of extraneous offenses should not be relevant to the balancing test. The harm to be prevented by the law prohibiting escape is prisoners roaming at large in the community. While the commission of other crimes may result from a prisoner's roaming at large, that is not the harm to which the escape statute is specifically directed. Indeed, there are other statutes directed at these evils. But a prisoner who remains at large, after escaping an immediate threat to himself, directly

---

Arizona defines "escape" as an unauthorized "departure from custody or from a correctional facility in which a person is held or detained with knowledge that such departure is unpermitted or failure to return to custody or detention following a temporary leave granted for a specific purpose or for a limited period." A.R.S.A., Vol. 5A, § 13–2501(4).

Kansas defines "escape" as a "departure from custody without lawful authority or failure to return to custody following temporary leave law-

fully granted pursuant to express authorization of law or order of a court." K.S.A., Vol. 2A, § 21–3809(b)(2).

Louisiana defines "escape" in relevant part as: "The intentional departure of a person ... from lawful custody of any officer of the Department of Corrections or any law enforcement officer or from any place where he is lawfully detained by any law enforcement officer." La.R.S. 14:110, A(1) (ellipse inserted). *See also Boleyn,* 328 So.2d at 96 n. 1.

implicates the very harm sought to be prevented by making escape a crime.

Because I believe that the harm the escapee seeks to avoid *never* clearly outweighs the harm the law seeks to prevent *unless* the escapee subsequently surrenders or attempts to do so (as long as he has the opportunity), I would reverse and remand accordingly.

I respectfully dissent.

McCORMICK, P.J., joins.